THERAPY SERVICES, INC.

V.

CRYSTAL CITY NURSING CENTER, INC., ET AL.

Record No. 890278

March 2, 1990

Present: Compton, Stephenson, Whiting, Lacy, and Hassell, JJ., and Poff, Senior
Justice, and Gordon, Retired Justice

386

*Douglas E. McKinley (McKinley, Schmidtlein & Mitchell*, on briefs), for appellant.

*Sue Ellen Glazer (Stanley M. Brand; Sean Connelly; Brand & Lowell*, on brief), for appellees.

JUSTICE LACY delivered the opinion of the Court.

In this case we are asked to decide whether a provision in a contract for services between two businesses restricting employment of certain employees for a period of time is against public policy.

Therapy Services, Inc. is an entity certified by the Virginia Department of Health as a provider of skilled rehabilitative services. As such, it employs certified physical, occupational, and speech therapists and, in turn, contracts with health care facilities to deliver rehabilitative services at those facilities using its therapist employees.

Crystal City Nursing Center, Inc. (Crystal City)[1] is certified by the Virginia Department of Health as a skilled nursing facility. To maintain its certification it must provide skilled rehabilitation services, including physical, occupational, and speech therapy. To meet this requirement, Crystal City entered into three contracts with Therapy Services in October of 1984 and December of 1985. Pursuant to the contracts, Therapy Services agreed to provide re-

---

[1] Prior to February 3, 1986, Crystal City was named Carriage Hill-Arlington, Inc.

habilitation therapy programs to Crystal City's patients using therapists employed by Therapy Services.

In November of 1987, ten Therapy Services personnel were providing rehabilitative services to Crystal City's patients. However, on November 5 and 10, 1987, in accordance with the contract provisions, Crystal City notified Therapy Services that it was terminating the agreements. Crystal City then began employment negotiations with the Therapy Services personnel who were working at Crystal City. This effort was conducted both directly by Crystal City and through an intermediary, John Merendino, M.D., t/a Physical Therapy and Rehabilitation Services.

After discovering Crystal City's attempt to hire its employees, Therapy Services filed a bill of complaint seeking an injunction to prevent Crystal City from hiring its therapists and damages for breach of the written agreements.[2] Specifically, Therapy Services alleged that Crystal City breached paragraph 13 of the agreements, under which Crystal City agreed not to hire any of the staff which Therapy Services provided under the contract for the duration of the contract period and for six months following the termination thereof.

Crystal City responded that it had not breached its contract with Therapy Services because the Therapy Services employees were in fact hired by an independent contractor, John Merendino. Furthermore, Crystal City contended that the paragraph in question was unenforceable because it was against public policy in that it affected the rights of third parties without their consent or knowledge.

At a hearing held on cross motions for summary judgment, Therapy Services' employees testified that they were unaware of the contents of paragraph 13 prior to accepting employment with Therapy Services. Based on this testimony, the trial court found that the Therapy Services employees unknowingly waived their "right to seek a livelihood" and therefore the agreements contained in paragraph 13 were against public policy. The trial court, before the conclusion of Therapy Services' evidence, granted Crystal City's motion for summary judgment. We granted Therapy Services an appeal.

---

[2] Subsequently, Therapy Services withdrew its request for an injunction and sought only damages for breach of contract.

■■■ Although the provision in question involves an employee's ability to secure future employment, it is neither a covenant not to compete nor a restrictive covenant between employer and employee. It is a contract between two businesses wherein one business agrees to provide rehabilitative services to patients of the other. As part of the agreement, one party agrees to forego the ability to hire certain people who are not parties to the contract. As such, it is a contract in restraint of trade and will be held void as against public policy if it is unreasonable as between the parties or is injurious to the public.

> Whether or not the restraint is reasonable is to be determined by considering whether it is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interest of the public.

*Merriman* v. *Cover*, 104 Va. 428, 436, 51 S.E. 817, 819 (1905) (citations omitted).

■ Therapy Services argues that it has a legitimate interest in protecting its ability to maintain professional personnel in its employ, thus enabling it to provide the services required under its contracts with health care facilities. Without a clause similar to paragraph 13, Therapy Services asserts that it would become an "involuntary and unpaid employment agency" for Crystal City. We agree that Therapy Services has a legitimate interest to protect and that paragraph 13 affords fair protection to that interest.

The question then becomes whether the provision is "so large as to interfere with the interest of the public." *Id.* at 436, 51 S.E. at 819. Therapy Services asserts that the "only potential impact of the restrictions on the therapists is on their opportunity to work at [Crystal City] for six months after the Agreements' termination." This restriction is reasonable, Therapy Services contends, because it does not in any way inhibit the affected employees from seeking employment as therapists with any employer other than Crystal City. Finally, Therapy Services maintains that the employees' lack of knowledge of the restriction is immaterial, pointing out that other restrictive agreements such as restrictive employment agreements and exclusive dealing arrangements impact on the interests of entities which are not parties to such agreements. Such con-

tracts, Therapy Services continues, have not been held invalid because a third party lacks knowledge of them.

■ The right to earn a livelihood is embraced in the constitutional concept of "liberty." *McWhorter* v. *Commonwealth*, 191 Va. 857, 866, 63 S.E.2d 20, 24 (1951). However, this right is conceptually and practically distinct from a claim of a right to specific employment. Neither Crystal City nor the trial court has cited any authority for the proposition that individuals have a right to employment by an employer of their choice or by any specific employers. The evidence indicated that in the Northern Virginia area, therapists were in low supply and in high demand and, thus, should they choose to leave Therapy Services' employ, they could secure like positions in the area.

■ Similarly, there was no adverse impact on the interest of the public at large. The availability of therapists' services was not diminished since the affected therapists were not precluded from working in Northern Virginia or any other area. Under these circumstances we cannot conclude that paragraph 13 deprived the affected therapists of the "right to seek a livelihood" or that it interfered "with the interest of the public." *Merriman*, 104 Va. at 436, 51 S.E. at 819.

We will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*