Present: All the Justices

MOTION CONTROL SYSTEMS, INC.

v. Record No. 001940    OPINION BY JUSTICE ELIZABETH B. LACY
                                June 8, 2001
GREGORY C. EAST

FROM THE CIRCUIT COURT OF PULASKI COUNTY
Colin R. Gibb, Judge

Motion Control Systems, Inc. (MCS) appeals a decision of the trial court holding that a covenant not to compete executed by its former employee, Gregory C. East, was overbroad and therefore unenforceable. East assigns as cross-error the trial court's entry of an injunction under the Uniform Trade Secrets Act, Code §§ 59.1-336 through -343, permanently enjoining him from "disclosing to anyone any confidential, proprietary or trade secret information of Motion Control." We will affirm the trial court's determination that the covenant not to compete was overbroad and unenforceable, but because we conclude that the evidence is insufficient to support the imposition of the injunction, we will reverse that part of the trial court's judgment.

I. Facts

MCS engages in the business of designing and manufacturing high performance drive systems, including brushless motors as well as amplifiers and electronic controls for the motors. Each motor is custom made. MCS protects its

proprietary information regarding its products in a number of ways such as keeping customer lists confidential, restricting product application information, and removing identifying marks from component parts.

East began working for MCS as a test technician in 1991. He received numerous promotions and in 1998 was the Quality and Reliability Engineering Manager.  In this position, he had access to customer lists, customer specifications, and was involved in new product development. He was considered an integral member of the MCS management team.

In 1997, MCS asked its employees to sign a "Confidentiality and Noncompetition Agreement" (the Agreement).  As presented to East, Paragraph 3(b) of the Agreement provided:

> Therefore, the Employee agrees that for a period of two years after termination of their employment with the Company in any manner whether with or without cause, the Employee will not within a one hundred (100) mile radius of the Company's principal office in Dublin, Virginia, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be associated in any manner with the ownership, management, operation or control of any business similar to the type of business conducted by the Company at the time of the termination of this Agreement.  The term "business similar to the type of business conducted by the Company" includes, but is not limited to any business that designs, manufactures, sells or distributes motors, motor drives or motor controls.

East was concerned that the final sentence of this provision could apply to prohibit work in areas beyond the scope of MCS's business. Upon advice of counsel, East suggested the deletion of the phrase "but is not limited to." MCS accepted East's proposed changes and added the word "currently," changing the final sentence of paragraph 3(b) to read:

> The term "business similar to the type of business conducted by the Company" currently includes any business that designs, manufactur[es], sells or distributes motors, motor drives or motor controls.

East then signed the Agreement.

East resigned from MCS in December 1998 and was hired by Litton Systems, Inc. (Litton) in August 1999 as a supervisor in Litton's slip ring manufacturing operation at its Blacksburg plant. Litton makes brushless motors at its Blacksburg facility.

The trial court found that MCS and Litton made some of the same products and that MCS reasonably could be concerned that Litton was "going to get into the production of [MCS's] product and put [MCS] out of business." Nevertheless, the trial court concluded that the covenant not to compete was unenforceable because the final sentence of paragraph 3(b) "imposed additional restraints which are far greater than reasonably necessary to protect [MCS] in [its] legitimate business enterprise." The trial court did, however, enjoin

East from "disclosing to anyone any confidential, proprietary or trade secret information of Motion Control," even though the trial court found that Litton had not attempted to gain any trade secrets and East had not "made any disclosure of any trade secret or any other like fact."

## II.  Covenant Not to Compete

Covenants not to compete are restraints on trade and accordingly are not favored.  The validity of a covenant not to compete is determined by applying not only the general principles of contract construction, but also legal principles specifically applicable to such covenants.  The employer bears the burden to show that the restraint is reasonable and no greater than necessary to protect the employer's legitimate business interests.  The restraint may not be unduly harsh or oppressive in curtailing the employee's legitimate efforts to earn a livelihood and must be reasonable in light of sound public policy.  As a restraint of trade, the covenant must be strictly construed and, if ambiguous, it must be construed in favor of the employee.  Richardson v. Paxton Co., 203 Va. 790, 794-95, 127 S.E.2d 113, 117 (1962).  On appeal, our examination of the covenant not to compete presents a question of law which we review de novo.  See, e.g., Musselman v. The Glass Works, L.L.C., 260 Va. 342, 346, 533 S.E.2d 919, 921 (2000).

In this appeal, the two-year time period and geographic area covered by MCS' covenant not to compete are not at issue. Rather, the sole issue is whether the language of Paragraph 3(b) is overbroad. Relying on our cases that have approved language similar to that contained in Paragraph 3(b), MCS argues that the present restraint is no greater than necessary to protect its interests because the language is "narrowly tailored" to protect MCS from former employees disclosing its proprietary or confidential information to competitors. We disagree.

The covenants not to compete in the cases upon which MCS relies contained some, but not all, of the language used in Paragraph 3(b). These covenants stated that the former employee could not be involved in "any business similar to the type of business conducted by" the employer, Roanoke Eng'g Sales Co. v. Rosenbaum, 223 Va. 548, 551, 290 S.E.2d 882, 883 (1982), or that the employee would not work for a competitor who "renders the same or similar services as Employer," Blue Ridge Anesthesia & Critical Care v. Gidick, 239 Va. 369, 370, 389 S.E.2d 467, 468 (1990), thus limiting prohibited employment to other business "similar" to the employer's business. The prohibition in this case goes further, however. By defining a "similar business" as "any business that designs, manufactures, sells or distributes motors, motor

5

drives or motor controls," MCS's covenant also prohibits employment in any business, for example, that sells motors, regardless of whether the motors are the specialized types of brushless motors sold by MCS.  As the trial court concluded, under this provision, the restricted activities "could include a wide range of enterprises unrelated to" the business of MCS.  Although the change in language suggested by East may have narrowed the range of prohibited employment, neither before nor after the alteration was the prohibited employment restricted to businesses which engage in activities similar to those in which MCS engaged.

Accordingly, we conclude that the trial court did not err in holding that the covenant not to compete in this case imposed restraints that exceeded those necessary to protect the legitimate business interests of MCS and, therefore, was unenforceable.

### III.  Injunction

The trial court, finding that East had knowledge of MCS's trade secrets, enjoined East from disclosing MCS's confidential, trade secret, or proprietary information to anyone, pursuant to Code § 59.1-337.  That section provides in pertinent part:

> A.  Actual or threatened misappropriation may be enjoined.  Upon application to the court, an injunction shall be terminated when the trade

> secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

By its terms, this section requires actual or threatened disclosure of trade secrets. The only basis cited by the trial court for issuing the injunction was that East had knowledge of the trade secrets of MCS. The trial court made no findings that East had actually disclosed or threatened to disclose such information. To the contrary, the trial court specifically found that East had not disclosed "any trade secret or any other like fact." Mere knowledge of trade secrets is insufficient to support an injunction under the terms of Code § 59.1-337.

For the reasons stated, we will affirm that portion of the trial court's judgment holding that the covenant not to compete is overbroad and unenforceable and reverse that portion of the judgment imposing an injunction against East pursuant to Code § 59.1-337.

<u>Affirmed in part,
reversed in part
and final judgment.</u>