Present:  Lacy, Keenan, Koontz, Kinser, Lemons, and Agee, JJ.,
and Stephenson, S.J.

OMNIPLEX WORLD SERVICES CORPORATION

v.  Record No. 042287     OPINION BY JUSTICE ELIZABETH B. LACY
                                   September 16, 2005
US INVESTIGATIONS SERVICES,
INC., ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jonathan C. Thacher, Judge

In this appeal, we consider whether the provisions of a
non-competition contract are overbroad and unenforceable.

FACTS AND PROCEEDINGS

Omniplex World Services Corporation (Omniplex) is a
highly specialized employment agency that provides a variety
of security services to government and private sector
customers.  In August 2003, Omniplex prevailed in its bid to
provide staffing for a government agency, referred to as a
"Sensitive Government Customer" or "SGC," in a project
entitled "Project Eagle."  Staffing of this project required
that personnel have a "Top-Secret" security clearance
validated by the SGC, regardless of the function performed.

At the time Omniplex won the bid, Kathleen M. Schaffer
was working on Project Eagle as an employee of MVM, Inc.,
another staffing company.  Upon learning that MVM no longer
had the contract to staff Project Eagle, Schaffer sent out
applications for employment to various staffing agencies,

including The Smith Corporation.  Before receiving a response from The Smith Corporation, Schaffer was offered continued employment at Project Eagle by Omniplex.  On August 26, 2003, Schaffer signed a one-year employment agreement with Omniplex. The agreement provided for a $2,000 bonus and included a non-competition provision.  That provision stated in pertinent part:

> Employee hereby covenants and agrees that, immediately following any termination of employment from OMNIPLEX that occurs before the expiration of the Term, . . . Employee shall not for the remainder of the Term (i) accept employment, become employed by, or perform any services for OMNIPLEX's Customer for whom Employee provided services or for any other employer in a position supporting OMNIPLEX's Customer, if the employment or engagement requires Employee to possess the same level of security clearance Employee relied on during his employment with OMNIPLEX, . . . .

Schaffer worked for Omniplex in general administrative security support, monitoring alarms and intrusion detection systems at the SGC's general headquarters, an overt location.

On October 23, 2003, The Smith Corporation responded to Schaffer's earlier employment application and offered her a position as an administrative assistant for the SGC at a covert location.  This position required her to arrange travel, including obtaining visas and passports and offered a higher hourly wage than Schaffer was currently earning.

Schaffer accepted the offer and, on November 4, 2003, resigned from Omniplex and returned the $2,000 bonus.

Omniplex filed a three-count motion for judgment claiming that Schaffer breached her employment contract, that The Smith Company and U.S. Investigation Services, Inc., the parent company of The Smith Company (collectively "USIS"), tortiously interfered with Schaffer's employment contract, and that Schaffer and USIS engaged in a conspiracy to injure Omniplex's business in violation of Code § 18.2-499. Omniplex sought injunctive relief and $1,350,000 in damages. The trial court denied Omniplex's motion for a temporary injunction.

Following an ore tenus hearing, the trial court struck Omniplex's evidence, concluding that the non-compete provision of Schaffer's employment agreement was overbroad. Based on this conclusion, the trial court entered an order dismissing all three counts of Omniplex's motion for judgment. We awarded Omniplex an appeal.

DISCUSSION

The standards we apply in reviewing a covenant not to compete are well established. A non-competition agreement between an employer and an employee will be enforced if the contract is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living, and is not against public

3

policy. Modern Env'ts, Inc. v. Stinnett, 263 Va. 491, 493, 561 S.E.2d 694, 695 (2002); Simmons v. Miller, 261 Va. 561, 580-81, 544 S.E.2d 666, 678 (2001). Because such restrictive covenants are disfavored restraints on trade, the employer bears the burden of proof and any ambiguities in the contract will be construed in favor of the employee. Id. at 581, 544 S.E.2d at 678. Each non-competition agreement must be evaluated on its own merits, balancing the provisions of the contract with the circumstances of the businesses and employees involved. See Modern Env'ts, 263 Va. at 494-95, 561 S.E.2d at 696. Whether the covenant not to compete is enforceable is a question of law which we review de novo. Simmons, 261 Va. at 581, 544 S.E.2d at 678; Motion Control Sys., Inc. v. East, 262 Va. 33, 37, 546 S.E.2d 424, 426 (2001).

These standards have been developed over the years to strike a balance between an employee's right to secure gainful employment and the employer's legitimate interest in protection from competition by a former employee based on the employee's ability to use information or other elements associated with the employee's former employment. Worrie v. Boze, 191 Va. 916, 927-28, 62 S.E.2d 876, 882 (1951). By its very name, a covenant not to compete is an agreement to prevent an employee from engaging in activities that actually

4

or potentially compete with the employee's former employer. Thus, covenants not to compete have been upheld only when employees are prohibited from competing directly with the former employer or through employment with a direct competitor.  Compare Motion Control Sys., 262 Va. at 37-38, 546 S.E.2d at 426 (covenant not to compete restricting employment with motor manufacturers that did not manufacture motors similar to employer overbroad because covenant did not protect against competition), and Richardson v. Paxton Co., 203 Va. 790, 795, 127 S.E.2d 113, 117 (1962)(covenant not to compete that restricted former employee, who sold specific supplies and services, from working for any employer involved with any kind of supplies, equipment, or services in the same industry overbroad because covenant encompassed business for which employer did not compete), with Blue Ridge Anesthesia and Critical Care, Inc. v. Gidick, 239 Va. 369, 373, 389 S.E.2d 467, 469 (1990)(non-competition agreement reasonable because restriction protected against direct competition by prohibiting former employees from employment with another company in a position selling similar medical equipment to that sold by former employer), and Roanoke Eng'g Sales Co. v. Rosenbaum, 223 Va. 548, 553, 290 S.E.2d 882, 885 (1982)(non-competition covenant reasonable because employment restriction limited to activities similar to business conducted by former

5

employer). The restriction in this case is not limited to positions competitive with Omniplex.

Under the provision at issue, Schaffer is prohibited from performing "any services . . . <u>for any other employer</u> in a position supporting OMNIPLEX's Customer."[*] (Emphasis added.) This provision precludes Schaffer from working for <u>any</u> business that provides support of any kind to the SGC, not only security staffing businesses that were in competition with Omniplex. Thus, for example, the non-competition agreement precludes Schaffer from working as a delivery person for a vendor which delivers materials to the SGC if such security clearance was required to enter an SGC installation even though the vendor was not a staffing service competing with Omniplex. Because the prohibition in this non-competition provision is not limited to employment that would be in competition with Omniplex, the covenant is overbroad and unenforceable. <u>Motion Control Sys.</u>, 262 Va. at 37-38, 546 S.E.2d at 426; <u>Richardson</u>, 203 Va. at 795, 127 S.E.2d at 117.

Accordingly, for the reasons stated, we will affirm the judgment of the trial court.

<u>Affirmed.</u>

JUSTICE AGEE, with whom JUSTICE KEENAN and JUSTICE KINSER join, dissenting.

---

[*] It is uncontested that the "customer" referred to in the non-competition provision is the SGC.

6

The trial court found that the restrictive covenant at issue in this case was overly broad because it had no geographic specification, in effect a worldwide covenant.[1] Not commenting on the trial court's rationale, the majority holds that the covenant is unreasonable because it does not limit the prohibited positions to those of direct competition. Under the specific facts of this case, I cannot agree with either view and therefore respectfully dissent.

The majority cites Motion Control Systems, Inc. v. East, 262 Va. 33, 37-38, 546 S.E.2d 424, 426 (2001), and Richardson v. Paxton Co., 203 Va. 790, 795, 127 S.E.2d 113, 117 (1962), to support its holding that the noncompete provision is overbroad because the contract restriction is not limited to employment that would be in competition with Omniplex. Neither of these cases, or any others, however, establish a rule that noncompete provisions are per se unenforceable if they fail to limit the restriction to those positions in direct competition with the former employer. Rather, in each case we held that under the facts of that case, the restrictive covenant at issue "imposed restraints that

---

[1] The noncompetition agreement also contains a provision prohibiting Schaffer from providing "security or security support services . . . within a fifty (50) mile radius of the site or location which Employee primarily provided services during . . . Omniplex employment." Apparently, the trial court did not rule on the applicability of this provision and it is not before us in this appeal.

7

exceeded those necessary to protect [the former employer's] legitimate business interests." Motion Control, 262 Va. at 38, 546 S.E.2d at 426. See also Richardson, 203 Va. at 795, 127 S.E.2d at 117 ("Such restraint is unreasonable in that it is greater than is necessary to protect Paxton in his legitimate business interest, and it is unreasonable from the standpoint of Richardson because it is unduly harsh on him in curtailing his legitimate efforts to earn a livelihood. Thus it cannot be enforced.").

In a more recent case, Modern Environments, Inc. v. Stinnett, 263 Va. 491, 494-95, 561 S.E.2d 694, 695-96 (2002), we affirmed our view that a court may not determine the enforceability of a restrictive covenant which prohibits a former employee from working for a competitor in any capacity, by the language of the covenant alone. Surveying precedent, we noted that we have "not limit[ed] [our] review to considering whether the restrictive covenants were facially reasonable." Id. at 494, 561 S.E.2d at 696. Rather, we have "examined the legitimate, protectable interests of the employer, the nature of the former and subsequent employment of the employee . . . and the nature of the restraint in light of all the circumstances of the case." Id. at 494-95, 561 S.E.2d at 696.

These considerations form the basis of the three-part test we use to determine the validity of restrictive covenants:

> (1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than necessary to protect the employer in some legitimate business interest? (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood? (3) Is the restraint reasonable from the standpoint of a sound public policy?

Simmons v. Miller, 261 Va. 561, 580-81, 544 S.E.2d 666, 678 (2001). In examining the reasonableness of the restrictive covenant with regard to the interests of the employer, employee, and the public at large, we pay particular attention to the duration, function, and geographic reach of the covenant. Id. at 581, 544 S.E.2d at 678. We consider the reasonableness of the covenant on the facts of each particular case. Paramount Termite Control Co. v. Rector, 238 Va. 171, 174, 380 S.E.2d 922, 924 (1989). The employer seeking to enforce the restrictive covenant bears the burden of proving that the restraint is reasonable in light of those facts. Simmons, 261 Va. at 581, 544 S.E.2d at 678. We review the record de novo to determine whether Omniplex has met its burden. Id.

Omniplex argues that it has a legitimate business interest in retaining employees who hold the necessary top-level security clearance during the first year of its contract with the SGC. Neither the trial court nor the majority found that Omniplex' stated interest was not a legitimate business interest, but Schaffer argues on brief that retaining employees is not a legitimate business interest because this Court has never recognized it as such. Such an argument misinterprets the applicable law in this case.

Unlike courts of other jurisdictions, we have never established discrete categories of legitimate business interests which may be the subject of a restrictive covenant. Instead, we have placed the burden on the employer to show that the restrictive covenant is designed to protect an important business interest particular to that employer. See Modern Environments, 263 Va. at 495, 561 S.E.2d at 696 (conclusory statement that restrictive covenant protects a legitimate business interest, without explaining that interest, is insufficient). Even so, we have recognized Omniplex' stated business interest in an analogous context. [2] See Therapy Services v. Crystal City Nursing Center, 239 Va.

---

[2] See generally Richardson v. Paxton Co., 203 Va. 790, 792, 127 S.E.2d 113, 115 (1962) (finding noncompete agreement to be unreasonably restrictive to protect employer's business interest, but not disputing employer's asserted business interest in retaining salespeople).

10

385, 388, 389 S.E.2d 710, 711-12 (1990) (recognizing a company's "legitimate interest in protecting its ability to maintain professional personnel in its employ, thus enabling it to provide the services required under its contracts").[3] The record in this case reflects that Omniplex has shown it has a legitimate business interest in retaining "cleared" employees like Schaffer during the first year of the Project Eagle contract.

At trial, Michael M. Wines, Omniplex' vice president of security services, explained that as part of the SGC's bidding process, a staffing company must describe the steps that it will take to maintain a stable workforce and ensure that the project will be adequately staffed. Once awarded the Project Eagle contract, Omniplex was required to report staffing levels and plans for future staffing to the SGC on a regular basis. In the past, the SGC has cancelled contracts when a company could no longer provide sufficient "cleared" staff.

Wines described the impact on Omniplex when a cleared employee departs suddenly:

> [Y]ou have an employee that has institutional knowledge, has the clearance, has goodwill with the client, the client has a comfort level with them
> . . . .

---

[3] The noncompete provision in <u>Therapy Services</u> was contained in a contract between the staffing company and the client and was not a part of an employment contract. <u>See</u> 239 Va. at 387, 389 S.E.2d at 711.

11

> But . . . it also creates . . . a serious
> concern about contract performance . . .
> [especially] in the first year [of a contract].  As
> a first-year, a new contractor [is] trying to
> establish goodwill with the client, . . . a stable
> workforce, [and] ensure the client that they made
> the right selection.

> . . . .

> [W]hen [our employee is] working for us today, and
> the very next day they're [sic] working for one of
> our competitors in the same facility, supporting the
> same client[,] [t]he client starts to question our
> ability to retain employees.

Wines noted that while turnover is inevitable in any company, Omniplex has particular concerns about other staffing companies "poaching"[4] employees with top security clearances: "[M]any times our competitors are willing to pay additional funds for an employee [who is] not qualified for a position just because the employee has a clearance."  He testified that on a former contract, a competitor of Omniplex "poached five [out of eight] people in one day."  Wines noted that if a similar situation occurred on Project Eagle, "the only way [Omniplex] would be able to meet [its] contractual

---

[4] Wines distinguished the problem of "poaching" from the industry practice of hiring the incumbent workforce at a site when a staffing company takes over a contract from an outgoing security firm.  When Omniplex was awarded the Project Eagle contract, it offered higher salaries and benefits to the incumbent workforce at the Project Eagle site.  Wines testified that this practice is necessary as the incoming staffing company is required to assume contractual duties almost immediately, and the company is not allowed to submit an employee for a security clearance until after that company is awarded the contract.  Because the security clearance process takes an average of 12 months, it is unlikely that the contractor could provide enough cleared staff for the crucial first year of the contract without hiring the incumbent employees.

requirements would be forcing our existing staff to work overtime."

USIS has the same concerns. Peter F. Waldorf, an operations director for USIS, agreed that it is "very important for [USIS] to provide an adequate amount of cleared staff to [its] government customers." Waldorf also agreed that adequate staffing was a particularly important concern to the SGC, and that a government contractor such as USIS must maintain adequate staffing levels to be viable. Anthony Gallo, president of USIS professional services division, testified that in order to protect USIS' business interests, Schaffer was required to sign a noncompete[5] agreement similar to that which she signed with Omniplex upon accepting employment.[6] Gallo testified this was necessary "to demonstrate to your customers that your company has the capacity to maintain a stable workforce . . . ."

---

[5] The USIS noncompete provision reads in pertinent part:
> Employee agrees that during his or her term of employment and for a six (6) month period commencing on the last day of Employee's employment with Company, whether terminated for cause or otherwise, he or she may not without Company permission, directly or indirectly,
> (a)  [provide] services similar to those provided by the Company to any Customer; or
> (b)  assist any . . . enterprise in bidding, soliciting or procuring services similar to those provided by the Company to its Customers;
> . . . .

[6] Significantly, the USIS covenant is longer in duration than that of Omniplex, and prohibits employment with any entity serviced by USIS during the former employee's term of employment.

In order to protect its interest in maintaining a stable, qualified workforce during the crucial first year of the Project Eagle contract, Omniplex required each of its employees to sign a restrictive covenant prohibiting employment with any firm which supports the SGC, within a year from the first day of service with Omniplex, but only if such employment requires the same security clearance the SGC required. Omniplex argues that this restrictive covenant is narrowly tailored to protect its legitimate business interest during the contract's first year. I agree with Omniplex and would find that the restrictive covenant, as drawn in this case, is a reasonable protection of Omniplex' legitimate business interest to maintain a sufficient number of "cleared" employees during Project Eagle's first year.

Omniplex' success on Project Eagle is dependent upon its ability to retain "cleared" employees during the first year of the contract. The restrictive covenant commits an Omniplex employee only during the first year of employment and places no restrictions on an employee who leaves to take another position after that time. For one year after beginning employment with Omniplex, Schaffer was prohibited from working anywhere in the world for any independent contractor of the SGC if the

14

new position required her SGC security clearance.  In this case, the restriction on Schaffer would last only nine and one-half months.

This Court has noted that

[i]n determining the reasonableness and enforceability of restrictive covenants, trial courts must not consider function, geographical scope, and duration as three separate and distinct issues.  Rather, these limitations must be considered together.

Simmons, 261 Va. at 581, 544 S.E.2d at 678.  In my view, the trial court and the majority place undue and exaggerated emphasis on the covenant's lack of geographic restriction and lack of prohibited competitive activities, respectively.  Both failed to give due weight to the other narrow aspects of the restriction.  As noted above, the covenant applies only to employment with entities servicing the SGC in positions which require Schaffer's top-level security clearance.  Schaffer is otherwise free to work for any other employer at any location in the world.  She can work for any competitor of Omniplex, even one providing services to the SGC, so long as a lower security clearance is used (subject to other provisions of the noncompetition agreement).  The record contained no evidence that Schaffer's work skills could only be used at the SGC as opposed to other

15

potential employers.  Considering all these factors in context, the fact that the restrictive covenant does not contain a geographic limitation or a list of prohibited competitive positions does not make it overly broad.

The majority holds the noncompetition agreement is overbroad because it bars Schaffer from "perform[ing] any services for OMNIPLEX' customer."  Such a restriction, the majority argues, would "preclude[] Schaffer from working as a delivery person for a vendor which delivers materials to the SGC if such security clearance was required to enter an SGC installation even though the vendor was not a staffing service competing with Omniplex."  Even if the majority's analysis of the restrictive covenant is correct on this point, the possible prohibition on Schaffer's employment as an SGC delivery person is not overly broad.

Omniplex has a well-defined, vital business interest in prohibiting Schaffer from seeking other employment using her particular security clearance.  Without the ability to enforce the narrowly drawn restriction, Omniplex' legitimate business interest may be vitiated.  While it seems unlikely that Domino's Pizza or UPS would need a top level security clearance employee to deliver a pizza or a package to an SGC site, I would not find a restrictive covenant with such an effect to be overly broad under the specific facts of this

16

case.  As noted above, the restrictive covenant at issue is limited to only one entity, the SGC, and only in the first year of the contractual relationship.  That leaves the rest of the world's entities for the pizza or package delivery person to service.  Considering all the circumstances, the covenant is reasonable.

In addition, this Court has upheld restrictive covenants which lack a geographic restriction.  In Foti v. Cook, 220 Va. 800, 805-07, 263 S.E.2d 430, 433-34 (1980), we affirmed the trial court's decision to enforce a restrictive covenant which prohibited a former accounting firm partner from performing services for any client of the partnership.  The covenant in that case did not contain a geographic restriction, but rather centered on contact with former clients.  Id. at 807, 263 S.E.2d at 434.  Like the enforceable restrictive covenant in Foti, Schaffer's noncompete agreement is client-specific, rather than geographically based.   Schaffer's contract is much more narrowly drawn than the one in Foti, because the restrictive limit goes to only one Omniplex client and not to any others.

Similarly in Advanced Marine Enterprises v. PRC Inc., 256 Va. 106, 111, 127, 501 S.E.2d 148, 151, 160 (1998), we upheld a noncompete agreement which prohibited a former employee from competing with the employer within 50 miles of any of the

17

employer's offices.  We noted that even though the employer had 300 offices worldwide, the geographic restriction was reasonable because other elements of the restriction were more narrowly tailored.  Id. at 119, 501 S.E.2d at 155.

In addition to considering the other narrowly tailored aspects of the restrictive covenant, I believe that our fact-specific inquiry requires us to consider the nature of the employer's business in determining whether any geographic restriction is necessary.  I agree with the United States Court of Appeals for the Fourth Circuit that

> [w]ith respect to the territory to which the restriction should apply, the rule has always been that it might extend to the limits wherein the plaintiff's trade would be likely to go. The changes which have marked the course of judicial decisions in modern times seem to consist in conforming the application of the rule to the constant development of the facilities of commerce and the enlargement of the avenues of trade.

National Homes Corp. v. Lester Indus., Inc., 293 F. Supp. 1025, 1034 (W.D. Va. 1968) (citation omitted), aff'd in part and rev'd in part, 404 F.2d 225 (4th Cir. 1968).  See, e.g., West Publ'g Corp. v. Stanley, No. 03-5832, 2004 U.S. Dist. LEXIS 448, at *32 (D. Minn. 2004) (restrictive covenant lacking geographic limitation was "reasonable in light of the national, and . . . international, nature of internet business").

18

Omniplex and its competitors service government agencies both nationally and overseas. A particular government client may have contracts with multiple staffing companies for its various locations. A security clearance specific to such a client is a valuable asset and renders an employee vulnerable to "poaching" by a competitor, who also has a contract with that government client. Without its worldwide scope as to the single client, SGC, the restrictive covenant could not protect Omniplex' interest in protecting its workforce during the crucial first year on Project Eagle.

Likewise, limiting those positions an employee can take after leaving Omniplex does not sufficiently protect Omniplex' interest in maintaining adequate staffing. If Omniplex restricted Schaffer's subsequent employment by the tasks she performed, she would have no incentive not to use her valuable SGC specific security clearance to obtain other employment serving the SGC.

The restrictive covenant at issue in this case, when viewed in the context of the facts of this record, meets the three-part test for the validity of such covenants particularly for purposes of sufficiency on a motion to strike the evidence. The contractual restraint has been amply demonstrated to be reasonable, even essential, to protect Omniplex' contractual interests with the SGC. The restraint

19

is no greater than necessary to protect that interest, particularly when drawn for such a short period of time and without restriction on Schaffer's freedom to seek employment providing services to any employer in the world except one working at the SGC and requiring her level of security clearance.

For these same reasons, it cannot be said the restrictive covenant is unduly harsh in limiting Schaffer's ability to earn a livelihood. Finally, the restraint is reasonable from a public policy standpoint. When drawn as narrowly as in this case, the restrictive covenant safeguards the ability in unique economic circumstances for an employer to maintain the contracts that enable it to be a viable entity, particularly in the areas of national security and defense. Accordingly, I would reverse the judgment of the trial court and therefore respectfully dissent from the majority opinion.