# CIRCUIT COURT OF FAIRFAX COUNTY

Market*Access
International, Inc., et al.

v.

KMD Media, L.L.C., et al.

December 14, 2006

Case No. CL-2005-4314

BY JUDGE JONATHAN C. THACHER

On October 6, 2006, the parties came before this Court on the Defendant KMD Media, L.L.C.'s ("KMD Media") Demurrer to Count I alleging Breach of Contract (non-compete agreements) of the Amended Motion for Judgment. Demurrers were sustained to Defendants David Silverberg, Michelle Wandres, and Kim Hanson with leave to amend. The Demurrer as to Defendant Pro-Media Sales and Consulting, Inc. ("Pro-Media") was taken under advisement. Subsequently, Plaintiffs filed their Second Amended Motion for Judgment on October 27, 2006, with Count II re-alleging the Breach of Contract of the non-compete agreements by Defendants Pro-Media and Silverberg only. The parties returned to this Court on December 1, 2006, on the Defendant's Demurrer to Count II. The Demurrer was sustained as to Defendant Silverberg without leave to amend, and the Demurrer as to Pro-Media remained under advisement.

In both hearings, the crux of the issue regarding Defendant Pro Media is whether the non-compete agreement between Plaintiff Market*Access International, Inc. ("Market Access") and Defendant Pro-Media was properly drawn and thus enforceable as a matter of law.

*Background*

Plaintiff Market Access is an Arlington-based company that provides marketing, trade association conference planning, and training seminars for government and private industry personnel in the field of homeland security. Plaintiff Homeland Defense Journal, Inc. (HDJI) produces and distributes trade publications relating to homeland security and information technology security.

Market Access contracted with Defendant Pro-Media to sell advertising space in its publications. Under this agreement, Pro-Media agreed not to compete with the Plaintiff by selling or promoting publications that competed with Market Access' publications. The agreement also included a non-disclosure provision preventing Pro-Media from disclosing Market Access' proprietary client database.

Plaintiffs allege that Defendant Silverberg, who was hired to be the managing editor of *Homeland Defense Journal,* conspired with Market Access consultant Wandres, Pro-Media, and others to create a competing publication to Market Access' planned homeland security newsletter, alternatively called *Homeland Security Today* or *HSToday.* As part of the alleged conspiracy, Plaintiffs contend that the Defendants organized Defendant KMD as a means of publishing a print magazine called *HSToday* and a web site bearing the same name.

Count II of Plaintiff's Second Amended Motion for Judgment alleges Breach of Contract. Plaintiffs allege that Defendant Pro-Media breached its duties under the non-competition portion of its agreement with Market Access. The relevant non-compete language contained in the parties' agreement is as follows:

> Under this agreement, Sales Representative shall not compete with Company, directly or indirectly in the sale or promotion of products that directly compete with Company's existing publication, *Homeland Defense Journal,* for one year following the termination of this agreement. ... Company acknowledges that the primary business area of Sales Representative is the representation of several military publications (both in the U.S.

and abroad), and that Sales Representative will continue to represent publications of this nature during the scope of this agreement. . . .

Defendants' Memorandum in Support of Demurrer, Exhibit B. Defendants' motion is styled "Memorandum in Support of Defendants' Motion to Sustain Demurrer to Count II of the Second Amended Motion for Judgment" cited as Defendants' Memorandum in Support of Demurrer.

Defendant Pro-Media demurrers on the grounds that the non-compete agreement is unenforceable as a matter of law.

## Standard of Review

In reviewing a demurrer, all material facts properly pleaded are admitted as true for purposes of demurrer and the court may examine the substantive allegations of the pleadings as well as any accompanying exhibit mentioned in those pleadings. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993). In applying this rule, "the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged." *Id*. In ruling on a demurrer, the court does not evaluate and decide the merits of the claim; rather, the proper inquiry for the court is whether the bill states a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 252 (1993). The essential elements of a cause of action for breach of contract are: (1) a legal obligation of a defendant to the plaintiff, (2) a violation or breach of that right or duty, and (3) a consequential injury or damage to the plaintiff. *Caudill v. Wise Rambler*, 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969). Thus in a demurrer to a breach of contract action where the legal obligation arises from an alleged non-competition agreement between the parties, the proper inquiry is to whether the non-competition agreement is enforceable as a matter of law and whether sufficient facts have been alleged to sustain the cause of action.

## Analysis

In considering whether non-competition agreements are enforceable as a matter of law the Virginia Supreme Court has ruled that such an agreement may be enforced if the agreement is (1) narrowly drawn to protect an employer's business interest, is (2) not unduly burdensome on an employee's ability to earn a living, and (3) is not against public policy. *Omniplex World Services Corp. v. United States Investigations Services, Inc.*, 270 Va. 246,

249, 618 S.E.2d 340, 342 (2005). In Virginia, non-competition agreements are viewed as disfavored restraints on trade and thus the burden of proof that the agreement is reasonable and any ambiguities in the agreement are construed against the party seeking to enforce the agreement. *Id.* (internal citations omitted). Central to the analysis considering the reasonableness of these agreements is whether there are reasonable limits on duration and geographic area and whether the scope of the restrictions is narrowly tailored to protect the employer's interest. *See International Paper Co. v. Brooks*, 63 Va. Cir. 494 (City of Roanoke, 2003) (demurrers were sustained because the court found that the non-compete agreements were not reasonably limited in duration or geography). Any non-competition agreement that is over-broad is unenforceable as a matter of law. *Motion Control Sys., Inc. v. East*, 262 Va. 33, 37, 546 S.E.2d 424, 425 (2001).

In *Omniplex* a staffing services agency whose non-competition agreement was so broadly worded that an employee was prohibited from working for any other employer in a position supporting an Omniplex customer, even if that position was unrelated to Omniplex's contract. *Omniplex* at 248; 618 S.E.2d at 341. In other words, a former employee might not be able even to deliver pizza to the customer for fear of violating the non-competition agreement. *Id.* at 250; 618 S.E.2d at 343. The Supreme Court of Virginia held that the non-competition agreement at issue was over-broad and thus unenforceable as a matter of law. *Id.*

Similarly, in *Motion Control*, a non-compete agreement was held unenforceable as a matter of law because it was over-broad. *Motion Control*, 262 Va. at 38, 546 S.E.2d at 426. The non-compete agreement at issue stated that a former employee could not become involved in "any" business that engaged in the design, manufacture, sales, or distribution of motors, motor drives, or motor controls even if the new business dealt in a substantially different type of motors. *Id.* at 37-39; 546 S.E.2d at 426. The language of the non-compete agreement was so broad that "the restricted activities could include a wide range of enterprises unrelated to" the former employer's business. *Id.*

In both *Omniplex* and *Motion Control* the non-compete agreements at issue were held to be over-broad not simply because they lacked geographic limitations, but on grounds that they prohibited the employee from seeking employment even in areas not in direct competition with their former employers. The analysis of a non-competition agreement's geographic limitations, or lack of such limitations, is frequently used by courts to determine whether those agreements are narrowly drawn. In this analysis, Virginia courts do not consider geographic limitations alone; instead, Virginia

courts must consider together the intended function of the agreement and its duration as well as whether it contains a geographic limitation. *See Simmons v. Miller*, 261 Va. 561, 544 S.E.2d 666 (2001) (Non-compete agreement was found unenforceable because the agreement's terms with regards to duration, scope of restricted activities, and lack of any geographical limitation combined posed an unduly harsh and oppressive curtailing of the former employee's legitimate efforts to pursue her livelihood).

Virginia courts are hesitant to enforce non-competition agreements that essentially prohibit a person from seeking employment in his or her chosen field. *Id.* at 582, 544 S.E.2d 678-79. For that reason, many non-competition agreements contain geographical provisions limiting the area where the employee is not permitted to seek competing work to the area the business can expect to "reach." *Id.* Where a business is regional in scope this is relatively easy, but with the advent of the Internet and the nationalization of everything from products to ideas, this has become substantially more difficult. *Homeland Defense Journal* holds itself out as a national publication, and, indeed, homeland security itself is an issue that often lends itself to discussion on the national level.

Pro-Media argues that the lack of any geographic limitation renders the non-competition agreement unenforceable as a matter of law because it essentially infers a worldwide restriction. Defendant's Memorandum in Support of Demurrer at 4. The analysis conducted by the Virginia Supreme Court in the *Omniplex, Motion Control*, and *Simmons* cases does not support this contention. While, in each of these cases, the lack of geographic limitations was a part of the analysis, it was by no means solely determinative of the issue of whether the agreements were enforceable as a matter of law.

The Virginia Supreme Court has upheld non-competition agreements that are narrowly drawn even when they encompass a larger geographic area. In *Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick*, 239 Va. 369, 389 S.E.2d 467 (1990), a non-competition agreement that spanned four states, Virginia, North Carolina, West Virginia, and Maryland, as well as the District of Columbia, was not considered over-broad. The plaintiff company sold and serviced critical care and anesthesia equipment in that region and the Court noted that the agreement did not prohibit former employees from selling similar equipment outside the designated territory, nor did it prohibit the former employees from selling different medical equipment within the company's territory. *Id.* at 372-74, 389 S.E.2d at 469-70.

In *Roanoke Engineering Sales Co. v. Rosenbaum*, 223 Va. 548, 290 S.E.2d 882 (1982), the Virginia Supreme Court held that a three-year, multi-state non-competition agreement was not over-broad because the former

employee had knowledge of the employer's business interests in all its branches. The Court said the agreement was "coterminous" with the territory in which the firm did business and was therefore not over-broad. *Id.* at 553.

What can be garnered from the analysis of each of these cases is that, when the competition at issue is direct and the agreements are narrowly drawn to prohibit such direct competition, the non-competition agreements are more likely to be enforceable.

While the language of the non-competition agreement at issue clearly does not contain language limiting the geographic scope of the agreement, the language of the agreement does limit the duration of the non-compete agreement to one year and limits the prohibited activities to those in direct competition with *Homeland Defense Journal.*

The mere fact that there is no geographic limitation is not fatal to the enforceability of the non-compete agreement between Market Access and Pro-Media. The language of the agreement contemplates Pro-Media's continued relationships with other military publications and only specifically limits Pro-Media's activities to those that would directly compete with Market Access' *Homeland Defense Journal* publication. Thus it does not prohibit Pro-Media from continuing to work in its field in a manner the Virginia Supreme Court found objectionable in *Omniplex* or *Motion Control.* Nor does the one year limitation on direct competition with *Homeland Defense Journal* appear unreasonable considering the Court's analysis in *Rosenbaum.* The terms of the non-competition agreement at issue appear to be narrowly tailored to protect Market Access' legitimate business interests while not prohibiting Pro-Media from competing in its chosen field. The non-compete agreement at issue also appears to be narrowly tailored so that it does not offend public policy.

## Conclusion

The Court disagrees with the contention that the non-competition agreement between Market Access and Pro-Media is unenforceable as a matter of law. Therefore Pro-Media's Demurrer to Count II alleging Breach of Contract (non-compete agreements) by Pro-Media is overruled.

## Order

The parties came before this Court on December 1, 2006, on Defendant's Demurrer to Count II of the Second Amended Motion for Judgment; and upon consideration of the Parties' briefs and arguments, it is adjudged, ordered, and decreed that the Defendant's Demurrer as to

Defendant Silverberg is sustained without leave to amend; and it is further adjudged, ordered, and decreed that the Defendant's Demurrer as to Defendant Pro-Media is overruled, and this cause continues.