# CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Patient First
Richmond Medical
Group, L.L.C.

v.

Ameanthea Rica Blanco

February 15, 2011

Case No. CL10-6211

By Judge Frederick B. Lowe

This matter comes before the court upon the defendant's demurrer to a complaint primarily seeking injunctions to enforce both a covenant not to compete and a covenant not to solicit other employees for hire. After consideration of the pleadings, exhibits, briefs, and argument, the court finds that the covenants are overbroad and unenforceable and sustains the demurrer in its entirety.

Ameanthea Blanco is a Family Nurse Practitioner, who was previously employed by Patient First Richmond Medical Group, L.L.C. ("Patient First"). Patient First alleges that it provides primary and urgent care, providing medical services at a "reasonable cost" during extended weekday and weekend hours, without the need for an appointment. Compl. ¶¶ 11-12. Blanco began working for Patient First as a family nurse practitioner in 2006 and was "responsible for screening and treating patients on a primary and urgent care basis. In January 2010, she executed a "First Amended Physician Extender Employment Agreement" ("Employment Agreement"), which contains the non-competition and non-solicitation provisions at issue here. While still working at Patient First, Blanco began formation of Acira Health Professional, Inc., d/b/a The Practice, Set Fee Clinic ("The Practice") in April of 2010. Compl. ¶¶ 14, 20. Shortly thereafter, Blanco solicited two doctors employed by Patient First to become employees of The Practice. Compl. ¶ 26. She resigned from Patient First on August 13, 2010, and The Practice, which is located within a seven-mile radius of the Patient First facility where Blanco worked, commenced operations a

4

little over a month later. Compl. ¶¶ 28, 30. Patient First alleges that The Practice provides services in direct competition with it and has initiated this litigation seeking to enforce the Employment Agreement.

Paragraph 13(a) of the Employment Agreement contains a covenant not to compete with the following terms:

> for a period of two (2) years following the termination of . . . employment for any reason . . . [defendant] will not, directly or indirectly, for himself or as an agent, officer, director, member, partner, shareholder, independent contractor, owner, or employee, either:
>
> (i) perform medical services of the type he performed for Patient First during the twelve (12) months immediately preceding termination of employment within a seven (7) mile radius of any Patient First Center at which [defendant] regularly provided medical services on behalf of Patient First during the twelve (12) months immediately preceding the date of the termination of his employment . . . or
>
> (ii) perform urgent care medical services, as hereinafter defined . . . within a fifteen (15) mile radius of any Primary Center.

"Regularly provided medical services" includes those services provided by the employee for 20% or more of his scheduled hours. *See* ¶ 13(b)(ii). The agreement defines "urgent care services" to mean services provided by the employee as an employee of Patient First, provided more than 50% of the time on a non-appointment basis, other than emergency room services or services provided exclusively to minors. *See* ¶ 13(b)(i).

The Employment Agreement also contains provisions for "non-solicitation of staff." During employment and for a period of two years after the end of employment, the employee:

> shall not, directly or indirectly, whether for himself or for another person or entity, solicit or induce, or attempt to solicit or induce, any person who was employed by Patient First at any time during the twelve (12) month period immediately preceding the termination of [employee's] employment to leave the employment of Patient First for any reason whatsoever, or to hire any such individual so employed by Patient First.

Employment Agreement ¶ 13(e).

The test for the validity of a covenant not to compete is as follows:

(1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than necessary to protect the employer in some legitimate business interest?

(2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood?

(3) Is the restraint reasonable from the standpoint of a sound public policy?

*Simmons v. Miller*, 261 Va. 561, 580-81, 544 S.E.2d 666 (2001). The employer bears the burden of proof on these issues, and any ambiguities in the covenant will be construed against it. *Omniplex World Servs. Corp. v. US Investigations Servs.*, 270 Va. 246, 249, 618 S.E.2d 340 (2005). Thus, for example, geographic limitations will not be implied for a covenant that is silent on that issue. *Phoenix Renovation Corp. v. Rodriguez*, 439 F. Supp. 2d 510, 521 (E.D. Va. 2006), *aff'd*, 258 Fed. Appx. 526 (4th Cir. 2007). Most recently, the Virginia Supreme Court has held that covenants not to compete will not be upheld except where "employees are prohibited from competing directly with the former employer or through employment with a direct competitor." As a result, to be valid, a non-compete must be restricted to positions that are or could be "directly" competitive with the employer. *Omniplex*, 270 Va. at 249.

The critical issue for the covenant not to compete is whether the functional reach of the covenant is overbroad. Because prior reported cases involve disparate covenants and facts, it is not helpful to perform a detailed word-by-word comparison of covenants in those cases with the one here. However, prior cases do provide a lodestar for analysis of covenants not to compete: "the prohibition . . . [must be] limited to employment that would be in competition with [the employer]." *Id.* at 250. For example, in *Motion Control Systems, Inc. v. East*, the covenant stated the employee "will not . . . directly or indirectly, own, manage, operate, control, be employed by, participate in, or be associated in any manner with the ownership, management, operation, or control of . . . any business that designs, manufactures, sells, or distributes motors, motor drives, or motor controls." 262 Va. 33, 36, 546 S.E.2d 424 (2001). The employer's business was limited to the sale of only "specialized types of brushless motors." Thus, the provision was invalid because "the restricted activities `could include a wide range of enterprises unrelated to' the business of [the employer]." *Id.* at 38.

Similarly, in *Strategic Resources, Inc. v. Nevin*, 2005 U.S. Dist. LEXIS 30985 (E.D. Va. Nov. 23, 2005), the employee sought dismissal of a claim for breach of a covenant not to compete for failure to state a claim. The covenant provided that the defendant "shall not become associated (as an EMPLOYEE, officer, director, stockholder, proprietor, partner, consultant

or in any other capacity), either directly or indirectly, for his/her own account or for the account of any other person or entity, with any firm or business that provides management, information system, and engineering consulting services." The employer contended that the clause was valid because it was restricted to its central business activities. The court found the clause overbroad because it covered occupations in which the employer did not compete. As noted by the court, "There are certainly companies that are involved in management, information technology, and engineering consulting services worldwide with which SRI is not in potential competition." *Id.* at *6-7.

The covenant in this case is overbroad because its reach is not limited to occupations and businesses that are in competition with Patient First. It bars indirect involvement by the defendant in "perform[ing] medical services of the type he performed for Patient First," even as a shareholder. This would prohibit the defendant from owning stock in a publicly traded company if some part of that company provided the same medical services as the defendant and had a location within seven miles of where the defendant "regularly provided medical services" for Patient First. Barring one from being a stockholder in a publicly traded company is virtually inherently overbroad. Likewise, just as in *Strategic Resources*, there are certainly companies that would fit these parameters that would not be in competition with Patient First.

In addition, the agreement does not identify what constitutes "medical services" (including those provided as "urgent care") or define "indirect" performance of such services. Therefore, it leaves uncertain exactly what services the defendant could or could not provide without violating the covenant not to compete and extends coverage of the covenant to businesses and employment that are not in competition with Patient First. For example, the agreement requires the employee to "prepare full and accurate records of all professional services," along with "timely preparation of patient medical records." Employment Agreement ¶ 2(e). If this is considered "medical services," since it is part of the contractual duties of the defendant, then the defendant would be precluded from employment as a medical transcriptionist. The allegations of the Complaint do not establish this as a competitive occupation. Thus, this case is similar to *Lanmark Tech., Inc. v. Canales*, 454 F. Supp. 2d 524 (E.D. Va. 2006). The covenant not to compete in *Lanmark* barred the employee from assisting a "competitor . . . to obtain business opportunities to perform services similar to those provided by [Lanmark] that relates [sic] to (1) a contract or project being performed by [Lanmark], (2) a business opportunity that [Lanmark] is pursuing, or (3) a person or organization for whom [Lanmark] has provided or is providing services." *Id.* at 526-27. Various critical terms such as "services" and "perform" were not defined in the agreement. The court found that the terms had more than one meaning, so that the failure to define them created

ambiguity, leaving the employee to guess what conduct was prohibited. Therefore, the non-compete was unenforceable because "subjecting an employee to such uncertainty offends sound public policy." *Id.* at 530-31. *See also Power Distribution, Inc. v. Emergency Power Engineering, Inc.*, 569 F. Supp. 54, 58 (E.D. Va. 1983) (provision invalid when employee "must try to interpret the ambiguous provision to decide whether it is prudent, from a standpoint of possible legal liability, to accept a particular job or whether it might be necessary to resist plaintiff's efforts to assert that the provision covers a particular job").

Based upon the above, the court finds that the covenant not to compete is overbroad and uncertain in its functional reach and is unenforceable. The court makes the same finding regarding the covenant prohibiting solicitation and/or hiring of staff. Such covenants are generally analyzed in the same manner as covenants not to compete. *See, e.g., Strategic Resources*, 2005 U.S. Dist. LEXIS 30985 at *10-11 (decided under Virginia law; applied non-compete analysis); *Strategic Enter. Solutions, Inc. v. Ikuma*, 77 Va. Cir. 179 (Fairfax 2008) (same): *International Paper Co. v. Brooks*, 63 Va. Cir. 494, 495-96 (City of Roanoke 2003) (same); *cf. Therapy Services, Inc. v. Crystal City Nursing Center, Inc.*, 239 Va. 385, 387, 389 S.E.2d 710 (1990) (employee non-solicitation agreement between businesses is "a contract in restraint of trade and will be held void as against public policy if it is unreasonable as between the parties or is injurious to the public"). Here, the provision barring solicitation of employees by the defendant contains some of the same undefined language as the non-compete and is unlimited as to location or function. Patient First lacks a legitimate interest for preventing a prior employee from soliciting or hiring employees internationally and for any occupation whatsoever.

Accordingly, the demurrer to the claims based on the covenant not to compete and non-solicitation clauses is sustained without leave to amend, as these provisions of the Employment Agreement are unenforceable. Likewise, the demurrers to Patient First's request for the return of confidential documents and its allegations of breach of contract based upon defendant's failure to give specified advance notice before ending her employment are sustained. No facts are alleged to support the claim that documents were taken nor facts regarding damages sustained due to inadequate notice. However, the court will grant leave to amend only as to the request for the return of confidential documents, if facts exist that can be alleged regarding what documents were taken.