**GANDOLFO'S DELI BOYS, LLC, Plaintiff,**

**v.**

**Terry HOLMAN and B & H Deli, LLC, Defendants.**

**Civil Action File Number 1:07–cv–634–TCB.**

United States District Court, N.D. Georgia, Atlanta Division.

June 7, 2007.

Michael D. Grider, William K. Whitner, Paul Hastings Janofsky & Walker LLP, Atlanta, GA, for Plaintiff.

Ronnie L. Quigley, Vincent Justin Arpey, Davis Matthews & Quigley, Atlanta, GA, for Defendants.

### ORDER

BATTEN, District Judge.

This matter is before the Court on Plaintiff Gandolfo's Deli Boys, LLC's motion for a preliminary injunction against its former franchisee, Defendant B & H Deli, LLC, and B & H's principal owner and guarantor, Defendant Terry Holman. For the reasons that follow, the Court denies Plaintiff's motion.

### I. Facts [1]

Gandolfo's has developed a restaurant franchise system for preparing, selling, and marketing hot and cold deli sandwiches and related food and beverage products. Since Gandolfo's inception in 1989, it has expanded to approximately fifty-three locations. Gandolfo's is the owner of the trade name GANDOLFO'S NEW YORK DELICATESSEN and a design incorporating that name.

The Gandolfo's franchise at issue here was located in Duluth, Georgia and was operated by Defendants. On September 12, 2003, Defendant B & H entered into a franchise agreement with Gandolfo's in which it agreed, *inter alia,* to: (1) use Gandolfo's trademarks and system solely for the purpose of operating the franchise; (2) pay a royalty to Gandolfo's for the use of its trademarks and system; and (3) comply with the operation and system standards adopted by Gandolfo's.

Additionally, the agreement gave Gandolfo's the right to terminate the agreement if, *inter alia,* B & H abandoned the franchise, failed to make payments, or failed to comply with any provision of the franchise agreement. Also, in the event that the agreement was terminated, B & H was required to pay all sums owed to Gandolfo's and cease using its trademarks or colorable imitations of the trademarks.

Of particular importance to the present dispute, section 17.4 of the agreement contains a noncompetition covenant that provides in pertinent part:

(a) [B & H] agree that, for a period of 2 years commencing on the effective date of termination or expiration or the date on which a person restricted by this Section begins to comply with this Section, whichever is later, neither you nor

---

1. Because the material facts are not in dispute, the Court issues its ruling based upon the briefs and affidavits submitted by the parties without the need for oral argument. *Accord McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1313 (11th Cir.1998) (citing *Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations,* 107 F.3d 979, 984 (2d Cir.1997)).

any of your owners will have any direct or indirect interest (e.g., through a spouse or child) as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, representative or agent or in any other capacity in any Competitive Business operating:

(i) at the Site;

(ii) within 10 miles of the Site; or

(iii) within 10 miles of any other GANDOLFO's DELI Restaurants in operation or under construction on the later of the effective date of the termination or expiration or the date on which a person restricted by this Section complies with this Section.

If any person restricted by this Section refuses voluntarily to comply with the foregoing obligations, the 2–year period will commence with the entry of an order of an arbitrator or court if necessary, enforcing this provision.

Section 9 of the agreement defines the term "competitive business" as "any business or facility owning, operating or managing, or granting franchises or licenses to others to do so, any Restaurant or food service facility that offers casual dining and take-out sandwiches, salads or any type of deli foods and beverages (other than a GANDOLFO'S DELI Restaurant operated under a franchise agreement with us)."

On or about September 2, 2004, subject to the terms of the franchise agreement described above, Defendants opened a Gandolfo's franchise in Duluth, Georgia. Around the same time, Defendants executed a conditional assignment and assumption of lease that provides, *inter alia*, in the event of a breach, Gandolfo's may take possession of the Duluth store and its con-tents. Additionally, Defendant Holman executed a principal owner's guaranty in which he agreed to be held personally liable for any breaches of the franchise agreement or other claims asserted by Gandolfo's.

Beginning in or about September 2006, Defendants stopped paying the full amount of royalties to Gandolfo's. In late October 2006, Defendants shut down the store and changed the store's name, signage, color of the menus, items on the menu, and recipes, and removed all Gandolfo's logos and insignias.

Defendants later reopened the store under the name "G's Deli." According to Defendants, the usage of the letter "G" in the name G's Deli is short for Giovanni Preteroti, the individual who manages and operates the restaurant. Like Gandolfo's, G's Deli sells a variety of deli sandwiches. However, G's Deli also sells items that are not offered by Gandolfo's, including pizza, pasta, specialty coffees, smoothies, grilled sandwiches, fresh-baked bread, and break-fast items, including omelets and hash browns. Unlike Gandolfo's, G's Deli also allows customers to rent out space and provides catering services.

Plaintiff contends that Defendants' continued operation of G's Deli constitutes a breach of the franchise agreement's non-competition covenant and violates federal trademark law. Accordingly, Plaintiff moves for a preliminary injunction.

In response, Defendants argue that Plaintiff has failed to demonstrate a substantial likelihood of success on its claims. Defendants also counterclaim for breach of contract, contending that Gandolfo's failed to inspect the Duluth store and provide them with advice and marketing to assist in the operation of the store as required under the franchise agreement.

## II. *Analysis*

 A district court may grant injunctive relief if the movant shows the following: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that if issued the injunction would not be adverse to the public interest." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir.1989). A "preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (5th Cir.1974)).

### A. *Alleged Breach of Noncompetition Covenant*

Plaintiff argues that Defendants' operation of G's Deli at the same address where their Gandolfo's franchise was formerly located constitutes a breach of the franchise agreement's noncompetition covenant.

Given the sweeping language of the noncompetition covenant, it is clear that Defendants' operation of G's Deli would violate the provision if the covenant were found enforceable. Thus, whether Plaintiff has established a substantial likelihood of success on the merits with respect to this claim requires the Court to determine whether the covenant is enforceable.

 As a preliminary matter, the Court must resolve which state's law governs the interpretation of the covenant. Plaintiff argues in a cursory fashion that Utah law should apply because the franchise agreement contains a choice of law clause providing that the agreement shall be governed by the law of the state in which Gandolfo's principal place of business is located, which is Utah.

 In response, Defendants maintain that the application of Utah law would contravene Georgia public policy. Under Georgia law, courts will refuse to honor a choice of law clause if application of the chosen law would " 'contravene the policy of, or would be prejudicial to the interests of' " the state of Georgia. *Keener v. Convergys Corp.*, 342 F.3d 1264, 1267 (11th Cir.2003) (quoting *Convergys Corp. v. Keener*, 276 Ga. 808, 810, 582 S.E.2d 84, 85–86 (2003)).

For the reasons that follow, the Court finds that the covenant contravenes the public policy of Georgia and is otherwise invalid. And because the covenant is invalid under Georgia law, the Court is not permitted to apply the law of another state in interpreting the covenant. *See Hostetler v. Answerthink, Inc.*, 267 Ga.App. 325, 328, 599 S.E.2d 271, 274–75 (2004); *Keener*, 342 F.3d at 1267–68; *Enron Capital & Trade Res. Corp. v. Pokalsky*, 227 Ga.App. 727, 730, 490 S.E.2d 136, 139 (1997); *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 676, 238 S.E.2d 368, 369 (1977). Consequently, Georgia law controls the enforceability *vel non* of the covenant.

██ Georgia law "considers franchise agreements to be analogous to employment contracts, and covenants in such agreements receive strict scrutiny and are not blue-penciled." *Smallbizpros, Inc. v. Court*, 414 F.Supp.2d 1245, 1249 (M.D.Ga. 2006). "A noncompetition covenant entered into in connection with a franchise or employment contract is enforceable, but

only where it is strictly limited in time and territorial effect and is otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the franchisee." *Allen v. Hub Cap Heaven, Inc.,* 225 Ga.App. 533, 538, 484 S.E.2d 259, 264 (1997).

■ As explained below, under these standards, the noncompetition covenant at issue is unenforceable.

■ First, the covenant is unenforceable because it broadly restricts Defendants from having "any direct or indirect interest ... as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, representative or agent or *in any other capacity* in any Competitive Business." (emphasis added). The Georgia Supreme Court has made clear that a covenant that restricts a former franchisee from employment in a competing business "in any capacity" is overbroad and will not be enforced. *See, e.g., Fields v. Rainbow Int'l Carpet Dyeing & Cleaning Co.,* 259 Ga. 375, 376, 380 S.E.2d 693, 693–94 (1989); *Howard Schultz & Assocs. of the Southeast, Inc. v. Broniec,* 239 Ga. 181, 184, 236 S.E.2d 265, 268 (1977).

Additionally, the covenant is unreasonably broad considering the business interest of Gandolfo's sought to be protected. In addition to being strictly limited in time and territorial effect, a covenant not to compete must be "otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the franchisee." *Allen,* 225 Ga. App. at 538, 484 S.E.2d at 264.

The covenant at issue purports to restrict Defendants from operating any competitive business at the Duluth location, within ten miles of the location, or within ten miles of any other Gandolfo's location. The agreement defines a "competitive business" as any restaurant offering "casual dining and take-out of sandwiches, salads, or any type of deli foods and beverages."

This limitation is unreasonable because it purports to preclude Defendants from opening a broad array of restaurants, including those that do not target the same customers or directly compete with Gandolfo's. For example, the plain language of the covenant would preclude Defendants from operating almost any casual restaurant, including a McDonald's, Burger King, and Chick–fil–A, all of which offer "casual dining and take-out of sandwiches [and] salads...."

Second, the covenant is overbroad because its territorial restriction is not strictly limited. As indicated above, the territorial restriction restricts Defendants from operating a competitive business (1) at the Duluth location, (2) within ten miles of the Duluth location, or (3) within ten miles of any other Gandolfo's in operation or under construction on the later of the effective date of the termination of the agreement or the date on which a person restricted by the covenant complies with the section.

This type of territorial restriction is invalid because it is capable of changing and expanding during the life of the agreement. Georgia courts hold that a restrictive covenant is invalid where "the [restricted] territory cannot be determined until the contract terminates." *Advance Tech. Consultants, Inc. v. RoadTrac, LLC,* 250 Ga.App. 317, 322, 551 S.E.2d 735, 739 (2001); *see also New Atlanta Ear, Nose & Throat Assocs., P.C. v. Pratt,* 253 Ga.App. 681, 685–86, 560 S.E.2d 268, 272 (2002); *Koger Props., Inc. v. Adams–Cates Co.,* 247 Ga. 68, 69, 274 S.E.2d 329, 331 (1981).

The territorial restriction at issue allows new restricted territories to be added during the life of the agreement. For example, a construction of a new Gandolfo's after the execution of the agreement would expand the restricted territory to include that store location. For this reason, the restricted territory covered by the covenant cannot be determined at the time the franchise agreement was executed and in fact could not be determined until, at the earliest, the time the agreement terminated. Such a provision is unduly broad under Georgia law and is overly restrictive of a former franchisee's interests.

Furthermore, the territorial restriction prevents Defendants not only from doing business in areas in which they have done business, but also in areas where only Gandolfo's and its other franchisees conduct business. Georgia courts have explained that territorial restrictions pertaining to territory where the employee was never employed "generally are unenforceable absent a showing by the employer of the legitimate business interests sought to be protected." *Rollins Protective Servs. Co. v. Palermo*, 249 Ga. 138, 140, 287 S.E.2d 546, 548 (1982).

Currently, outside the state of Georgia,[2] Gandolfo's has locations in North Carolina, Maryland, Nebraska, Oklahoma, Colorado, Montana, Idaho, Utah, Arizona, Nevada, Washington, and California. Pursuant to the covenant, Defendants would be precluded from having a direct or indirect interest in, or even be employed by, a competing business within ten miles of any of the Gandolfo's locations in these other states, most of which are far from the state of Georgia, where Defendants operated their franchise. Plaintiff has failed to demonstrate that the overwhelming breadth of the territorial restriction is justified.

■ Third, because of a tolling provision, the covenant is unenforceable for want of a definite time limitation. Under Georgia law, a tolling provision that potentially extends the duration of a covenant not to compete indefinitely renders the covenant unreasonable and unenforceable. *ALW Mktg. Corp. v. McKinney*, 205 Ga. App. 184, 188, 421 S.E.2d 565, 568 (1992). In *ALW*, the restrictive covenant contained the following provision that modified the three-year limitation period: "The running of the post-termination three-year period shall be tolled and suspended while RVP is in violation of this covenant." *Id.*

Similarly, the covenant at issue in this case contains the following provision: "If any person restricted by this Section refuses voluntarily to comply with the foregoing obligations, the 2-year period will commence with the entry of an order of an arbitrator or court if necessary, enforcing the provision." Unlike the covenant in ALW, the covenant at issue here does not employ the use of the word "tolling." Nevertheless, the provision is functionally equivalent to the one in *ALW* in that it seeks to extend the two-year time limitation indefinitely.[3]

---

2. Not counting the Defendants' former Gandolfo's franchise, Plaintiff has only two locations in Georgia, one in Peachtree City and one in Newnan.

3. Citing only *Paul Robinson, Inc. v. Haege*, 218 Ga.App. 578, 579, 462 S.E.2d 396, 397–98 (1995), Plaintiff argues that cases since *ALW* have approved of tolling provisions in restrictive covenants. Plaintiff misinterprets the holding of *Haege*. Although the *Haege* court did find that the specific tolling provision at issue in that case was enforceable, it did so only after concluding that the provision was markedly different from the one in *ALW*

The Court is mindful that the inclusion of the noncompetition covenant in the franchise agreement was presumably motivated by a desire to protect Gandolfo's franchise system. While that is a legitimate interest, this particular covenant drafted by Gandolfo's. does not pass muster under Georgia law. For all of these reasons, Court concludes that the noncompetition covenant is unenforceable, and Plaintiff has therefore failed to demonstrate a substantial likelihood of success on the merits of a claim based upon the covenant.[4]

## B. Alleged Violations of Trademark Laws

■ For the reasons set forth herein, the Court also finds that Plaintiff has failed to establish a substantial likelihood of success on the merits of its trademark claims. In essence, Plaintiff argues that Defendants have violated the Lanham Act because their continued operation of G's Deli is likely to cause confusion among consumers and constitutes unfair competition.

■ "In order to prevail on a trademark infringement claim, the registrant must show that (1) its mark was used in commerce by the defendant without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive." *Burger King Corp. v. Mason,* 710 F.2d 1480, 1491 (1983).

It is undisputed that Defendants have ceased using Gandolfo's logo and name.

Therefore, Plaintiffs trademark claims are based upon the alleged similarity of the name G's Deli to the Gandolfo's name and the fact that Defendants have advertised their services as "G's Deli, Same Great People, Same Great Food, Different Name."

In an attempt to support its argument, Plaintiff cites several cases in which courts have found former franchisees liable for trademark violations, including *Howard Johnson Co. v. Khimani,* 892 F.2d 1512 (11th Cir.1990), *Ramada Inns, Inc. v. Gadsden Motel Co.,* 804 F.2d 1562 (11th Cir.1986), *Burger King Corp. v. Mason,* 710 F.2d 1480 (11th Cir.1983), and *Professional Golfers Ass'n of America v. Bankers Life & Casualty Co.,* 514 F.2d 665 (5th Cir.1975). However, all of these cases are inapposite because they either involved a former franchisee's continued use of the franchisor's entire trademarks or colors, or involved substantial evidence that the former franchisee intended to "trade off" of the franchisor's name.

Without more, Defendants' mere usage of the name "G's Deli" and the above advertising message are insufficient for Plaintiff to establish a substantial likelihood of success on its trademark claims. It is undisputed that Defendants have taken several measures to distance itself from any association with the Gandolfo's franchise system, including: (1) changing the signage for the store and discontinuing the use of the Gandolfo's name, font, and colors; (2) purchasing new uniforms for em-

because it did not purport to expand the covenant's time limitation indefinitely. By contrast, the provision in this case is analogous to the one at issue in *ALW,* and Plaintiff's reliance upon *Haege* is therefore misplaced.

**4.** Defendants also argue that even if the covenant is unenforceable, Gandolfo's is not enti-

tled to specific performance of the covenant or any of the post-termination obligations because Gandolfo's has unclean hands. Because the Court finds that the agreement is unenforceable, there is no need to address this alternative argument.

ployees of G's Deli that are different from those worn by employees of Gandolfo's; (3) printing new menus that differ from the Gandolfo's menus in color, organization, and food names; (4) changing the recipes of all food items on the menu; (5) removing all of Gandolfo's marketing books and manuals; (6) offering a number of different menu items, including pizza, pasta, specialty coffees, smoothies, grilled sandwiches, freshly baked bread, alternative meals such as fish dinners and chicken breasts, and breakfast items including omelets and hash browns; and (7) offering services such as catering that Gandolfo's does not provide.

Moreover, Plaintiff has not cited any case in which a Court has shut down the operations of a business due to the use of a trademark mark that is an alleged "colorable imitation" of another's trademark. It appears to the Court that if a former franchisee infringes the franchisor's trademark, the proper recourse is to seek an injunction against the continued use of that mark, not to shut down the entire business, as Plaintiff seeks to do here. Consequently, the Court finds that Plaintiff has failed to demonstrate a substantial likelihood of success on the merits with respect to its trademark claims.

### III. *Conclusion*

For the foregoing reasons, the Court denies Plaintiffs motion for a preliminary injunction [8].

IT IS SO ORDERED.