PRESENT:  All the Justices

HOME PARAMOUNT PEST CONTROL
COMPANIES, INC.
                                          OPINION BY
v.    Record No. 101837          JUSTICE WILLIAM C. MIMS
                                       November 4, 2011
JUSTIN SHAFFER, ET AL.

          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Robert J. Smith, Judge

     In this appeal, we consider whether a "non-compete"

provision in an employment agreement is overbroad and therefore

unenforceable.

          I.    BACKGROUND AND MATERIAL PROCEEDINGS BELOW

     Justin Shaffer was an employee of Home Paramount Pest

Control Companies, Inc. ("Home Paramount").  In January 2009, he

signed an employment agreement containing the following

provision ("the Provision"):

          The Employee will not engage directly or
          indirectly or concern himself/herself in any
          manner whatsoever in the carrying on or
          conducting the business of exterminating, pest
          control, termite control and/or fumigation
          services as an owner, agent, servant,
          representative, or employee, and/or as a member
          of a partnership and/or as an officer, director
          or stockholder of any corporation, or in any
          manner whatsoever, in any city, cities, county or
          counties in the state(s) in which the Employee
          works and/or in which the Employee was assigned
          during the two (2) years next preceding the
          termination of the Employment Agreement and for a
          period of two (2) years from and after the date
          upon which he/she shall cease for any reason
          whatsoever to be an employee of [Home Paramount].

In July 2009, Shaffer resigned from Home Paramount. Soon thereafter and within the two-year period set forth in the Provision, he became employed by Connor's Termite and Pest Control, Inc. ("Connor's").

In September 2009, Home Paramount filed an amended verified complaint asserting that Shaffer's employment by Connor's violated the Provision and alleging, among other things, breach of contract by Shaffer and tortious interference with contract by Connor's. The defendants filed a plea in bar to these claims, asserting that the Provision is overbroad and therefore unenforceable. After an evidentiary hearing, the circuit court granted the plea in bar and dismissed the relevant counts of the amended complaint. The remaining counts then were nonsuited and we awarded Home Paramount this appeal.[1]

## II. ANALYSIS

The enforceability of a provision that restricts competition is a question of law that we review de novo. Omniplex World Servs. Corp. v. US Investigations Servs., Inc., 270 Va. 246, 249, 618 S.E.2d 340, 342 (2005). It is enforceable if it "is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living, and is not against public policy." Id.

---

[1] The nonsuited claims are not within the scope of this appeal.

The employer bears the burden of proving each of these factors. Modern Env'ts, Inc. v. Stinnett, 263 Va. 491, 493, 561 S.E.2d 694, 695 (2002).  When evaluating whether the employer has met that burden, we consider the "function, geographic scope, and duration" elements of the restriction.  Simmons v. Miller, 261 Va. 561, 581, 544 S.E.2d 666, 678 (2001).  These elements are "considered together" rather than "as three separate and distinct issues."  Id.

Home Paramount asserts that the circuit court erred by focusing on the language of the Provision prohibiting Shaffer from "engag[ing] indirectly or concern[ing] himself . . . in any manner whatsoever" in pest control "as an owner, agent, servant, representative, or employee, and/or as a member of a partnership and/or as an officer, director or stockholder of any corporation, or in any manner whatsoever."  By doing so, Home Paramount argues, the court took those words out of context and gave undue weight to the function element of the enforceability analysis to the exclusion of the geographic scope and duration elements.  Home Paramount contends the geographic scope was relatively narrow and the duration was one commonly accepted for such provisions, so those elements compensate for the breadth of the function element, making the Provision as a whole no broader than necessary to protect its legitimate business interests.  We disagree.

We have consistently assessed the function element of provisions that restrict competition by determining whether the prohibited activity is of the same type as that actually engaged in by the former employer.  For example, in Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick, 239 Va. 369, 389 S.E.2d 467 (1990), the employer was a medical equipment vendor.  We upheld a provision that prohibited employees from "open[ing] or be[ing] employed by or act[ing] on behalf of any competitor of [the] [e]mployer which renders the same or similar services." Id. at 370, 389 S.E.2d at 468.  However, that provision included explicit language allowing employees to "work[] in the medical industry in some role which would not compete with the business" of the employer.  Id. at 371, 389 S.E.2d at 468.  We noted that "the former employees are not forbidden from working in any capacity for a medical equipment company, or from selling any type of medical equipment.  They are only prohibited 'from working in the medical industry in some role which would . . . compete with the business' " of the employer.  Id. at 373, 389 S.E.2d at 469 (emphasis in original).

We upheld a similar provision in Advanced Marine Enterprises, Inc. v. PRC Inc., 256 Va. 106, 501 S.E.2d 148 (1998).  In that case, the employer provided marine engineering services and included in its employment agreement a provision prohibiting its employees from "rendering competing services to"

4

any customer of the employer for whom the employee had performed services during the period of his employment. Id. at 111, 501 S.E.2d at 151. We noted that the provision "does not contain a blanket prohibition against working for a competitor. Instead, [it] merely prohibits an employee . . . from 'rendering competing services to' " the former employer's customers. Id. at 119, 501 S.E.2d at 155.

By contrast, we held that a broader provision was unenforceable in Simmons. It prohibited former employees from "directly or indirectly own[ing], manag[ing], control[ing], be[ing] employed by, participat[ing] in, or be[ing] connected in any manner with ownership, management, operation, or control of any business similar to the type of business conducted by" the former employer. 261 Va. at 580, 544 S.E.2d at 678. We concluded the provision was "considerably broader than" the former employer's business activity, which was limited to the importation of a single, "particular brand of cigars grown and manufactured in the Canary Islands." Id. at 581, 544 S.E.2d at 678.

Likewise, we held the provision to be unenforceable in Motion Control Systems, Inc. v. East, 262 Va. 33, 546 S.E.2d 424 (2001). That provision also prohibited any employee from "directly or indirectly own[ing], manag[ing], operat[ing], control[ing], be[ing] employed by, participat[ing] in, or

5

be[ing] associated in any manner with the ownership, management, operation or control of any business similar to the type of business conducted by" the former employer, namely the "design[], manufacture[], [sale] or distribut[ion of] motors, motor drives or motor controls." Id. at 36, 546 S.E.2d at 425. The functional limitation was too broad because the former employer dealt solely with specialized brushless motors. Id. at 37-38, 546 S.E.2d at 426.

In Omniplex World Services, we observed that valid provisions prohibit "an employee from engaging in activities that actually or potentially compete with the employee's former employer." 270 Va. at 249, 618 S.E.2d at 342 (emphasis added). But a former employee may find new employment with his former employer's competitor in which he engages exclusively in activities that do not compete with the former employer. See Blue Ridge Anesthesia, 239 Va. at 373, 389 S.E.2d at 469 (noting the unenforceability of a provision prohibiting employment that competed with any branch of the former employer's operations when the former employee had no connection to some of those branches). When a former employer seeks to prohibit its former employees from working for its competitors in any capacity, it must prove a legitimate business interest for doing so. Modern Env'ts, 263 Va. at 495, 561 S.E.2d at 696.

6

In this case, the Provision is akin to those we found unenforceable in Simmons and Motion Control.  On its face, it prohibits Shaffer from working for Connor's or any other business in the pest control industry in any capacity.  It bars him from engaging even indirectly, or concerning himself in any manner whatsoever, in the pest control business, even as a passive stockholder of a publicly traded international conglomerate with a pest control subsidiary.  The circuit court therefore did not err in requiring Home Paramount to prove it had a legitimate business interest in such a sweeping prohibition.

Home Paramount protests that this rule of law invites circuit courts to do what the court did in this case, to contemplate various "hypothetical job duties" including bookkeeping, vehicle maintenance, and janitorial services.  But Home Paramount invited the circuit court to contemplate such hypotheticals when it drafted a provision that prohibits former employees from working for competitors in any capacity.  Because Home Paramount did not confine the function element of the Provision to those activities it actually engaged in, it bore the burden of proving a legitimate business interest in prohibiting Shaffer from engaging in all reasonably conceivable activities while employed by a competitor.

7

Home Paramount also argues that the circuit court erred in failing to consider its evidence of Shaffer's academic training and work experience – for example, that Shaffer had a bachelor's degree in entomology and had no experience in bookkeeping, vehicle maintenance, or janitorial service. This evidence, Home Paramount contends, would have eliminated these hypothetical job duties from the scope of the court's consideration. The argument that the scope of the function element could be altered by extrinsic and extraneous evidence to mean something narrower than its clear language is without merit. Home Paramount has not argued that the Provision is ambiguous and that recourse to parol evidence was required to interpret it. Home Paramount thus was limited to adducing evidence to prove that the language it chose furthered its legitimate business interests, did not unduly burden Shaffer's ability to earn a living, and was not contrary to public policy. See Simmons, 261 Va. at 580-81, 544 S.E.2d at 678.

Although we weigh the function element of a provision that restricts competition together with its geographic scope and duration elements,[2] the clear overbreadth of the function here cannot be saved by narrow tailoring of geographic scope and duration. Accordingly, we will affirm the circuit court's

---

[2] Neither Shaffer nor Connor's has objected to these elements of the Provision.

8

judgment that the Provision was overbroad and therefore unenforceable.

Citing <u>Paramount Termite Control Co. v. Rector</u>, 238 Va. 171, 380 S.E.2d 922 (1989),[3] Home Paramount also argues that "[i]t has been settled law for more than 20 years that similar language of Home Paramount's non-compete agreement is not overly broad and is enforceable."  Home Paramount thereby suggests that the doctrine of stare decisis compels us to uphold the Provision in this case.  We disagree.

Stare decisis "is not an inexorable command."  <u>McDonald v. City of Chicago</u>, 561 U.S. ___, 130 S.Ct. 3020, 3063 (2010) (Thomas, J., concurring) (quoting <u>Lawrence v. Texas</u>, 539 U.S. 558, 577 (2003)) (internal quotation marks omitted).  It "was never meant to prevent a careful evolution of the law.  Stare decisis, pushed to extremes, would mean the law, once stated by the courts, could never be changed by the courts."  <u>Selected Risks Ins. Co. v. Dean</u>, 233 Va. 260, 276, 355 S.E.2d 579, 588 (1987) (Poff, J., dissenting).

Without such change, we would be compelled

> to ignore our duty to develop the orderly
> evolution of the common law of this Commonwealth.
> Indeed, this Court's obligation to reexamine
> critically its precedent . . . enhance[s]
> confidence in the judiciary and strengthen[s] the
> importance of stare decisis in our jurisprudence.

---

[3] Home Paramount is the successor-in-interest to the prevailing party in this 1989 case.

9

> Although we have only done so on rare occasions,
> we have not hesitated to reexamine our precedent
> in proper cases and overrule such precedent when
> warranted.

Nunnally v. Artis, 254 Va. 247, 253, 492 S.E.2d 126, 129 (1997).

One condition warranting a departure from precedent is where the

law has changed in the interval between the earlier precedent

and the case before us.  See Lentz v. Morris, 236 Va. 78, 81-82,

372 S.E.2d 608, 609-10 (1988).  Then "[w]e have a duty . . . to

acknowledge when our later decisions have presented an

irreconcilable conflict with [the earlier] precedent."  Newman

v. Erie Ins. Exch., 256 Va. 501, 509, 507 S.E.2d 348, 352-53

(1998).

We acknowledge that the language of the provision we upheld

in Paramount Termite is identical to the Provision.  However, we

have incrementally clarified the law since that case was decided

in 1989.  In the intervening twenty-two years, we have gradually

refined its application beginning with Blue Ridge Anesthesia and

continuing through Advanced Marine Enterprises, Simmons, Motion

Control Systems, and ultimately Omniplex World Services in 2005.

Therefore, to the extent that Paramount Termite conflicts with

any portion of our holding today, Paramount Termite is

overruled.

Finally, Home Paramount argues the circuit court erred in

failing to consider its evidence that Shaffer actually breached

10

the Provision by soliciting its customers. However, the threshold question is whether the Provision is enforceable. Since the circuit court determined that the Provision cannot be enforced, the issue of its actual breach was not reached. To the extent that Home Paramount argues its evidence of actual solicitation proved it had a legitimate business interest in prohibiting Shaffer from engaging in the same activity for Connor's that he engaged in during the course of his employment by Home Paramount, such evidence would have been relevant if the function element in the Provision had been confined to barring such activity. Because we have found the circuit court did not err in ruling the Provision unenforceable, Home Paramount's evidence of Shaffer's actual breach was not relevant.

### III. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the circuit court.

Affirmed.

JUSTICE McCLANAHAN, dissenting.

The test for determining the validity of a non-compete agreement was the same when this Court, in 1989, decided Paramount Termite Control Co. v. Rector, 238 Va. 171, 380 S.E.2d 922 (1989), as it is today. Applying this test, we held in Paramount that the non-compete agreement at issue was valid. The non-compete agreement at issue in this case, involving the

11

very same company and business interests, is identical to the one we upheld in Paramount, as the majority acknowledges.  The majority nevertheless rejects Paramount as controlling authority in this case, and, indeed, overrules it.  Adherence to the doctrine of stare decisis, in my opinion, demands otherwise.

In overruling Paramount, the majority in effect penalizes the eminently and uniquely justified reliance of this Virginia business upon this prior precedent in ordering its affairs after prevailing in the prior case.  As Montesquieu cautioned, were judicial opinions "to be the private opinion of the judge, people would then live in society, without exactly knowing the nature of their obligations."  1 Charles de Secondat, Baron de Montesquieu, Spirit of Laws 165 (J. V. Prichard ed., Thomas Nugent trans., G. Bell & Sons, Ltd. 1914) (1752).  With today's decision, the majority fails to give due respect and deference to a basic tenet of stare decisis, which is that "in a well ordered society it is important for people to know what their legal rights are, not only under constitutions and legislative enactments but also as defined by judicial precedent, and when they have conducted their affairs in reliance thereon they ought not to have their rights swept away by judicial decree."  Myers v. Moore, 204 Va. 409, 413, 131 S.E.2d 414, 417 (1963).  "For it is an established rule to abide by former precedents," Blackstone explained, "where the same points come again in

litigation; as well to keep the scale of justice even and steady, and not liable to waver with every new judge's opinion." 1 William Blackstone, Commentaries *69.[*]

I therefore must dissent, agreeing with Justice Compton in Newman v. Erie Ins. Exch., 256 Va. 501, 510, 507 S.E.2d 348, 353 (1998) (Compton, J., dissenting) (quoting Smith v. Allwright, 321 U.S. 649, 669 (1944) (Roberts, J., dissenting)) that "[f]requent overruling of an appellate court's decisions tends to bring adjudications of the tribunal 'into the same class as a restricted railroad ticket, good for this day and train only.' "

---

[*] Judge Kelsey, with our Virginia Court of Appeals, put it well when he wrote: "By insisting upon a deep respect for stare decisis, the blueprints for the judiciary sought to siphon off decisionmaking power from those who, at a given moment, occupy the bench and then redistribute that power along a multigenerational line of jurists."  D. Arthur Kelsey, The Architecture of Judicial Power: Appellate Review & Stare Decisis, Virginia Lawyer (Oct. 2004, at 17).  See also The Federalist No. 78 (A. Hamilton) (explaining that the judiciary would be self-policing through adherence to precedents).