# CIRCUIT COURT OF THE CITY OF ROANOKE

Thomas Fame

v.

Allergy & Immunology, P.L.C.

Case No. CL15-1099

By Judge Charles N. Dorsey

July 28, 2015

This matter is before the Court on Plaintiff's Motion for Temporary Injunction to enjoin Defendant from enforcing a restrictive covenant in an employment agreement between the parties until the enforceability and applicability of said covenant is determined. Having read all of the briefs and memoranda of law submitted in the case, and with the additional benefit of *ore tenus* evidence and compelling argument by counsel on July 13, 2015, the Court denies Plaintiff's motion for the reasons that follow.

*Facts*

Dr. Thomas Fame is a board-certified allergist and immunologist who has lived and practiced in the Roanoke Valley area for the past twenty-three years. In addition to his medical practice, Dr. Fame has been very active in starting and managing a charitable endeavor in Haiti, to which he had recently been donating almost his entire salary. Dr. Fame and his family are involved in their local community, participating in a variety of civic and religious groups.

In 2010, Dr. Fame left his practice at Lewis-Gale Medical Center to join Allergy & Immunology, P.L.C. ("A&I"). There was no written employment agreement between Dr. Fame and A&I until February 1, 2011, when the parties executed a Nonmember Employment Agreement ("NEA"), which was agreed to be retroactively effective to June 21, 2010.

The NEA, which defined the parameters of the employment relationship between Dr. Fame and A&I, contained a "Non-Solicitation and Non-Competition" restrictive covenant. This provision ostensibly provides that, *inter alia*, at the termination of his employment, Dr. Fame will be prohibited from competing with A&I for a period of two years within a specified geographic range.

On May 1, 2015, Dr. Fame's employment with A&I was terminated. On June 25, 2015, Dr. Fame brought suit in this Court, seeking a declaratory judgment holding that the NEA's restrictive covenant is unenforceable and injunctive relief, temporary and permanent, enjoining A&I from enforcing the restrictive covenant. At present, this dispute hinges on whether Dr. Fame is entitled to a temporary injunction preventing A&I from enforcing the restrictive covenant during the pendency of Dr. Fame's larger suit.

## *Analysis*

As the United States Supreme Court has held, "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008); see *K & K of Va., L.L.C. v. Brinkley,* 87 Va. Cir. 4 (Norfolk 2013) (noting that while the Supreme Court of Virginia has not addressed the standard for a temporary injunction, circuit courts have routinely adopted the United States Supreme Court analysis in this context); see also *Hughes Network Sys., Inc. v. Interdigital Commc'ns Corp.,* 17 F.3d 691, 693 (4th Cir. 1994); see generally Va. Code Ann. §§ 8.01-620, 8.01-628 (2015); *Levisa Coal Co. v. Consolidation Coal Co.,* 276 Va. 44, 60, 662 S.E.2d 44, 53 (2008) (writing that "the granting of an injunction is an extraordinary remedy and rests on sound judicial discretion to be exercised upon consideration of the nature and circumstances of a particular case.") (citations omitted).

## *Likelihood of Success on the Merits*

Here, Plaintiff argues that he is likely to succeed on the merits of his case. The Supreme Court of Virginia has noted that to uphold a non-compete agreement, a court must find that the restrictive covenant "is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living, and is

not against public policy." *Home Paramount Pest Control Co. v. Shaffer,* 282 Va. 412, 415, 718 S.E.2d 762, 763-64 (2011) (citing *Omniplex World Servs. Corp. v. US Investigations Servs., Inc.,* 270 Va. 246, 249, 618 S.E.2d 340, 342 (2005)). Plaintiff notes that there is a marked antipathy towards non-compete clauses in Virginia jurisprudence, and reasons that the covenant in the NEA is overbroad, unduly harsh, and oppressive vis-a-vis its geographic scope, temporal duration, and the activities that it proscribes. Plaintiff has provided the Court with extensive case law from a variety of jurisdictions, which, Plaintiff argues, demonstrates that the restrictive covenant is unduly burdensome and, therefore, unenforceable. See *Hotel Paramount Pest Control Cos. v. Shaffer,* 282 Va. 412, 718 S.E.2d 762 (2011); *Omniplex World Svcs. Corp. v. US Investigations Servs., Inc.,* 270 Va. 246, 618 S.E.2d 340 (2005); 301 Dahlgren, *Ltd. P'ship v. Board of Supervisors of King George County,* 240 Va. 200, 396 S.E.2d 651 (1990); *Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick,* 239 Va. 369, 389 S.E.2d 467 (1990); *Paramount Termite Control· Co. v. Rector,* 238 Va. 171, 380 S.E.2d 922 (1989); *Foti v. Cook,* 220 Va. 800, 263 S.E.2d 430 (1980); *Patient First Richmond Med. Group, L.L.C. v. Blanco,* 83 Va. Cir. 3 (Virginia Beach 2011); *Lasership, Inc. v. Watson,* 79 Va. Cir. 205 (Fairfax County 2009); *Strategic Enter. Solutions, Inc. v. Ikuma,* 77 Va. Cir. 179 (Fairfax County 2008); *Pace v. Retirement Plan Admin. Svc., Ltd.,* 74 Va. Cir. 201 (Richmond 2007); *Smartmail Servs., L.L.C. v. Ellis,* 66 Va. Cir. 507 (Chesterfield County 2003); *Farm Veterinary Servs., Inc. v. Novak,* 61 Va. Cir. 584 (Franklin County 2001); *Lawrence v. Business Commc'ns of Va., Inc.,* 53 Va. Cir. 102 (Henrico County 2000); *Summs Recovery and Collection, Inc. v. Belle,* 44 Va. Cir. 475 (Richmond 1998); *Pais v. Automation Prods., Inc.,* 36 Va. Cir. 230 (Newport News 1995); see also *Deltek, Inc. v. Iuvo Sys., Inc.,* No. 1:09cv330, 2009 U.S. Dist. LEXIS 33555, 2009 WL 1073196 (E.D. Va. Apr. 20, 2009); *Gandolfo's Deli Boys, L.L.C. v. Holman,* 490 F. Supp. 2d 1353 (N.D. Ga. 2007); *Lanmark Tech., Inc. v. Canales,* 454 F. Supp. 2d 524 (E.D. Va. 2006); *Cantol, Inc. v. McDaniel,* No. 2:07CV86, 2006 U.S. Dist. LEXIS 24648, 2006 WL 1213992 (E.D. Va. Apr. 28, 2006); *Power Distribution, Inc. v. Emergency Power Eng'g, Inc.,* 569 F. Supp. 54 (E.D. Va. 1983); *Arthur Murray Dance Studios of Cleveland, Inc. v. Witter,* 62 Ohio Law Abs. 17, 105 N.E.2d 685 (Ohio Ct. Com. Pls. 1952); *H&R Block E. Enters. v. Swenson,* 2008 Wi. App. 3, 307 Wis. 2d 390, 745 N.W.2d 421 (Wis. App. 2007).

Defendant counters that the restrictive covenant found in the NEA is more narrowly-tailored than any non-compete provision that the Supreme Court of Virginia has examined.

Ultimately, Plaintiff is unable to establish that he is likely to succeed on the merits. While Plaintiff may ultimately prevail on the issue of the enforceability of the non-compete clause at a hearing on the permanent injunction, the issue presently is in equipoise as between the parties. While

there is a dearth of case law addressing what showing a Plaintiff must make to succeed on this prong of the test, Plaintiff should demonstrate a likelihood that he will, in fact, prevail on the merits. See *Wings, L.L.C. v. Capitol Leather, L.L.C.,* 88 Va. Cir. 83, 90-91 (Fairfax County 2014); *Smartmail Servs., L.L.C. v. Ellis,* 66 Va. Cir. 507, 510-11 (Chesterfield County 2003); *cf. Benten v. Kessler,* 505 U.S. 1084, 1085, 112 S. Ct. 2929, 120 L. Ed. 2d 926 (1992) (*per curiam*) (requiring a petitioner seeking a temporary injunction to demonstrate a substantial likelihood of success on the merits).

*Hardinge, Inc. v. Buehler* is one of the few published Virginia circuit court opinions where a plaintiff was found to have demonstrated a likelihood of success on the merits. 72 Va. Cir. 39, 39 (Amherst County 2006). While it is not the only such opinion, the court's reasoning in *Buehler* is instructive to the Court in the present matter. In *Buehler,* the plaintiff sought to enjoin defendants from operating, during the pendency of litigation, a machine that was pledged by defendants as collateral to secure a note with plaintiffs. The court reasoned that plaintiffs demonstrated the likelihood of success on the merits of the case because "the documents indicate that the appropriate financing statements have been filed . . . to secure the lien of the plaintiff to the machine. . . . The defendants have not raised any arguments to indicate to me that the plaintiff does not have a valid lien against the machine." *Id.* at 40.

The facts in the present matter are significantly different. Unlike the matter in *Buehler,* the Court here cannot simply review documentation for compliance with provisions in the Uniform Commercial Code. Instead, the Court here must determine the enforceability of a non-compete clause, a significant question that cannot be resolved in such a *pro forma* manner. Because Plaintiff is unable at this juncture to establish the likelihood of success on the merits, he is not entitled to a temporary injunction.

Since Plaintiff is unable to demonstrate a likelihood of success on the merits, the Court need not discuss the threat of irreparable harm to Plaintiff, balance the equities, nor discuss the public interest in the present matter and declines to do so.

The Court reiterates the suggestion that the parties seriously discuss mutual resolution of this issue. For example, at the evidentiary hearing on the temporary injunction, neither party seemed averse to the Plaintiff practicing at Carilion. The parties are free, of course, to continue with litigation rather than attempting to resolve the issue.

## Conclusion

Plaintiff cannot establish the likelihood of success on the merits and is not entitled to a temporary injunction. Accordingly, Plaintiff's Motion for Temporary Injunction is denied.

December 14, 2015

This matter is before the Court on Plaintiff's Motion for Judgment. Plaintiff seeks a declaratory judgment that a covenant not to compete is overbroad and unenforceable and a permanent injunction against enforcement of the non-competition covenant by Defendant. Having read all of the briefs and memoranda of law submitted in the case and with the benefit of additional evidence and argument by counsel on October 14, 2015, the Court grants Plaintiff both a declaratory judgment that the non-competition covenant is overbroad and a permanent injunction against the enforcement of the covenant by Defendant for the reasons that follow.

*Facts*

Dr. Thomas Fame is a board-certified allergist and immunologist who has lived and practiced in the Roanoke Valley for the past twenty-three years.

In 2010, Dr. Fame left his practice at Lewis-Gale Medical Center to join Allergy & Immunology, P.L.C. ("A&I"). There was initially no written employment agreement between Dr. Fame and A&I. On February 1, 2011, the parties executed a Nonmember Employment Agreement ("NEA"), which was to be retroactively effective from June 21, 2010. Dr. Fame knew what he was signing and intended to be bound by it. Dr. Fame's position with A&I consisted solely of his duties as a Staff Physician. He had no partnership or management duties for A&I.

The NEA, which defined the employment relationship between Dr. Fame and A&I, contained a "Non-solicitation and Non-competition" restrictive covenant. This provision ostensibly provides that, *inter alia*, at the termination of his employment, Dr. Fame will be prohibited from competing with A&I for a period of two years within a specified geographic range. The specified geographic range from the NEA covers "Roanoke City, Roanoke County, Botetourt County, Bedford County, Montgomery County, the City of Salem, Franklin County, Floyd County, Henry County, Rockbridge County, Campbell County, Amherst County, Appomattox County, Alleghany County, and the cities of Martinsville, Buena Vista, Lynchburg, Lexington, and Christiansburg, and the Town of Blacksburg." See NEA ¶ 7.4(A). Should Dr. Fame be employed by a competitor to treat allergy and immunological disorders as he did for A&I, the NEA prohibits Dr. Fame from later managing, operating, controlling, participating in, being employed by, or being connected in any way with the ownership, management, operation, or control of a professional practice that does similar work to A&I. *See* NEA ¶ 7.4(A).

On May 1, 2015, A&I terminated Dr. Fame's employment. On June 25, 2015, Dr. Fame brought suit in this Court, seeking declaratory judgment that he should not be bound by his contract on the ground that the NEA's

restrictive covenant is unenforceable and further requesting injunctive relief, temporary and permanent, enjoining A&I from enforcing the restrictive covenant.

## Analysis

Because non-competition provisions serve as restrictions on trade, Virginia does not favor their enforcement. See, e.g., *Lanmark Tech., Inc. v. Canales,* 454 F. Supp. 2d 524, 528 (E.D. Va. 2006); *Simmons v. Miller,* 261 Va. 561, 581, 544 S.E.2d 666, 678 (2001) (citing *Grant v. Carotek, Inc.,* 737 F.2d 410, 412 (4th Cir. 1984)). Though not favored, such provisions are enforceable when certain requirements are met. The requirements of an enforceable employment agreement are well settled under Virginia law. See, e.g., *Simmons,* 261 Va. at 580-81, 544 S.E.2d at 678; *Home Paramount Pest Control Co. v. Shaffer,* 282 Va. 412, 418, 718 S.E.2d 762, 765 (2011); *Omniplex World Servs. Corp. v. US Investigations Servs., Inc.,* 270 Va. 246, 249, 618 S.E.2d 340, 342 (2005); *Modern Env'ts, Inc. v. Stinnett,* 263 Va. 491, 493, 561 S.E.2d 694, 695 (2002). Such enforceability requires that: (1) from the viewpoint of the employer, the restraint is reasonable in that it is no broader than necessary to protect the employer's legitimate business interest; (2) from the viewpoint of the employee, the restraint is reasonable in that it is not unduly harsh or oppressive in curtailing his ability to earn a livelihood; and (3) from the standpoint of the public, the restraint is not unreasonably against public interests or policy. *Simmons,* 261 Va. at 580-81, 544 S.E.2d at 678. These three factors are considered together rather than separately and the clear overbreadth of any factor can defeat the enforceability of the provision, even if the other factors are narrowly drawn. See *Home Paramount,* 282 Va. at 419, 718 S.E.2d at 763-64 (describing that, while function elements of restrictive provisions are weighed together with scope and duration elements, the clear overbreadth of the function element cannot be saved by narrow drafting of scope and duration). The employer bears the burden of proof on these factors, and any ambiguities will be construed against him. *Omniplex,* 270 Va. at 249, 618 S.E.2d at 342. The Court will not edit, add to, or otherwise revise an agreement to make it enforceable. See *Parikh v. Family Care Ctr., Inc.,* 273 Va. 284, 288, 641 S.E.2d 98, 100 (2007) (internal citations omitted); see also *American Standard Homes Corp. v. Reinecke,* 245 Va. 113, 122, 425 S.E.2d 515, 519-20 (1993); *Pais v. Automation Products, Inc.,* 36 Va. Cir. 230, 239 (City of Newport News 1995).

A non-competition provision in an employment contract that is unambiguous and can be interpreted in only one reasonable way will be read according to its plain meaning. *Lawrence v. Business Commc'ns of Va., Inc.,* 53 Va. Cir. 102, 104 (Henrico Cnty. 2000) (internal citations omitted). Contracted provisions are considered contextually. *Id.* at 104 (internal citations omitted). As such, if a provision, when taken in context, is capable

of more than one reasonable construction, it is ambiguous, and the Court's construction will be that which is most favorable to the employee. *Id.* at 104 (internal citations omitted). If a non-compete clause in an employment agreement is ambiguous and capable of multiple interpretations, any of which are functionally overbroad, then the clause is unenforceable. *Lanmark Tech.*, 454 F. Supp. 2d at 529 (citing to *Pais,* 36 Va. Cir. at 239).

The non-competition covenant in this case is overbroad under the first two factors for an enforceable employment agreement. First, the covenant in the NEA is overbroad because it is ambiguous and at least one of the reasonable interpretations is overly broad and not narrowly tailored to protect only A&I's legitimate business interest. Second, it is overbroad in that it unduly burdens Dr. Fame by curtailing his ability to earn a living in his chosen and highly specialized profession. Due to these determinations, it is not necessary to take up the third factor.

A. *The Covenant Is Ambiguous and at Least One Reasonable Interpretation Is Overly Broad*

The first consideration in the enforceability of a non-competition agreement is whether the provision is drawn narrowly to protect a legitimate interest of the employer. See, e.g., *Simmons,* 261 Va. at 580-81, 544 S.E.2d at 678; *Home Paramount,* 282 Va. at 418, 718 S.E.2d at 765; *Omniplex,* 270 Va. at 249, 618 S.E.2d at 342; *Modern Env'ts,* 263 Va. at 493, 561 S.E.2d at 695. The considerations in evaluating whether a provision is overly broad include, among others, whether the prohibition is ambiguous, whether it actually prevents the employee from performing the services that he had previously provided to the employer, and whether the provision protects more broadly than necessary to protect the employee's legitimate business interest. See *Richardson v. Paxton Co.,* 203 Va. 790, 795, 127 S.E.2d 113, 117 (1962) (finding as too broad to protect only legitimate business interests of the employer a covenant prohibiting an employee from working in functionally any capacity for a competitor); *Lanmark Tech.,* 454 F. Supp. 2d at 529 (holding that a covenant that prohibited an employee from doing any type of work for a competitor was overbroad); *Pais,* 36 Va. Cir. at 239 (holding, *inter alia*, that a geographic limit with no reasonable connection to the interests of the employer is overbroad and unenforceable); *Lawrence,* 53 Va. Cir. at 104 (holding that an ambiguous restrictive provision which can reasonably be interpreted as overly broad is unenforceable). Covenants that are ambiguous, that prevent an employee from doing work unrelated to the work that they previously did for the employer, or that go beyond the employer's legitimate interest are unenforceable. See *Richardson v. Paxton Co.,* 203 Va. 790, 795, 127 S.E.2d 113, 117 (1962) (finding as too broad to protect only legitimate business interests of the employer a covenant prohibiting an employee from working in functionally any capacity for a competitor); *Lanmark Tech.,* 454 F. Supp. 2d at 529 (holding that a

covenant that prohibited an employee from doing any type of work for a competitor was overbroad); *Pais,* 36 Va. Cir. at 239 (holding, *inter alia,* that a geographic limit with no reasonable connection to the interests of the employer is overbroad and unenforceable); *Lawrence,* 53 Va. Cir. at 104 (holding that an ambiguous restrictive provision which can reasonably be interpreted as overly broad is unenforceable).

The NEA in this case is overly broad because it is ambiguous and at least one reasonable interpretation is not narrowly tailored to protect A&I's legitimate business interests. The terms provide that:

> The Employee will not within this Company's business area in which the Employee conducts Company's business for which this agreement is restricted to Roanoke City, Roanoke County, Botetourt County, Bedford County, Montgomery County, the City of Salem, Franklin County, Floyd County, Henry County, Rockbridge County, Campbell County, Amherst County, Appomattox County, Alleghany County, and the cities of Martinsville, Buena Vista, Lynchburg, Lexington, and Christiansburg, and the Town of Blacksburg manage, operate, control, participate in, be employed by, or be connected in any way with the ownership, management, operation, or control or work as an agent or employee of any business (professional practice) similar and competing with this Company in the type of business conducted by this Company as carried out by Employee in the last 12 months prior to termination, if the Employee is employed in the treatment of allergy and immunological conditions, similar to the services he provided to the Company.

NEA ¶ 7.4(A).

The provision can be interpreted in either of two ways: either (i) Dr. Fame is prohibited from treating any patients who hail from any of the listed areas regardless of where his practice is located when he treats them; or (ii) Dr. Fame is prohibited from treating patients while he, Dr. Fame, is physically within any of the listed areas, regardless of where those patients reside. This ambiguity, while apparent from the face of the provision, is further evidenced by the fact that A&I itself is unable to confidently identify the correct interpretation of this provision. Mr. Roger Bohon, the Practice Administrator for A&I, interpreted the provision in the first manner, answering "That's a true statement" to the question "So [Dr. Fame] could be practicing in Richmond and see a patient from Alleghany and he would be practicing in Alleghany?" Hr'g Tr. 19:15-24, July 13, 2015. In contrast, A&I took the position that Dr. Fame was "perfectly free to be in Radford and his solicitations could easily extend 25 miles into the area, almost into Salem." Def's Mem. Opp'n Summ. J. 8. This indicates that A&I

thought that the second interpretation of the provision was accurate. If A&I is unable to definitively interpret their own contract provision, it would be the epitome of unreasonableness to expect Dr. Fame to be able to do so.

Having established that there are two fair interpretations of the provision, the issue becomes whether either interpretation is unreasonable. If either reasonable interpretation of the contract is overly broad, then the entire provision is unenforceable. *Lanmark Tech.*, 454 F. Supp. 2d at 529 (citing to *Power Distribution, Inc. v. Emergency Power Engineering, Inc.*, 569 F. Supp. 54, 57-58 (E.D. Va. 1983)). The first interpretation of the provision, as advocated by Mr. Bohon, is overly broad as it would require Dr. Fame to screen his patients for connections to the Roanoke Valley regardless of whether he was practicing in Radford, Reno, or Rwanda. While dramatic to some degree, the point is well taken. The restrictive covenant is certainly not narrowly tailored to protect the legitimate business interests of A&I, and is, without question, unduly burdensome to Dr. Fame. Thus, because the restrictive covenant is subject to multiple reasonable interpretations and at least one fair interpretation is overly broad, the restriction is unenforceable.

B. *The Covenant Is Not Narrowly Tailored to A&I's Legitimate Business Interests*

In the alternative, the non-competition provision in the NEA is also overbroad because it prevents Dr. Fame from managing, operating, or controlling a competing professional practice. NEA ¶ 7.4(A). A non-competition restraint is too broad when it encompasses activities in which the employee was not engaged on behalf of the employer. See *Richardson*, 203 Va. at 795, 127 S.E.2d at 117 (holding as overly broad a restrictive covenant unenforceable because it prohibited the employee from engaging in any branch of marine services business as principal, agent, or servant when the employee had been a salesman for the employer). The covenant was overly broad because it prevented the employee from performing functions for a different employer which he had not performed for his previous employer. Such a restriction is unreasonable because it is greater than needed to protect the legitimate business interests of the employer and because it is unduly harsh on the employee in his attempts to find future employment. *Id.* Such an unreasonable, overly broad covenant is unenforceable.

In this case, A&I emphasizes that Dr. Fame was only a staff physician. He treated patients and served 'on calls,' but both parties agree that Dr. Fame never participated in the management, operation, or control of the partnership at A&I. Pl.'s Br. in Supp. of Mot. for Summ. J. 4 ("Dr. Fame was at all times with A&I an at-will, non-member, treating physician, excluded from 'all other aspects of management'.") (quoting Facts § A(4); Def's Br. Opp'n Mot. for Temp. Inj. 1-2 ("Dr. Fame never opened or managed a practice for [A&I] anywhere, much less the City of Salem, Virginia.

All management services have been provided by the member managers, to wit, Dane McBride and Saja Eapin, and by the Practice Administrator, Roger L. Bohon, including computerization, record retention, compliance, hiring, firing, policy setting, computer services, training, hiring [sic], termination, supply ordering, taxes, business forecasting, marketing, protocol establishment and all other aspects of management.")) In light of his limited duties at A&I, to prohibit him so broadly from engaging in functionally any position for another practice goes beyond the scope of what Dr. Fame did for A&I as its employee and, thus, beyond A&I's legitimate business interests. Because the provision is not narrowly tailored to the legitimate interests of A&I, it is overbroad, and in turn, unenforceable. See *Richardson*, 203 Va. at 795, 127 S.E.2d at 117.

C. *The Two Year Time Frame of the Restrictive Covenant Is Not Overly Broad*

Dr. Fame has argued that the two year time limit is unreasonable in that it is potentially an indefinite time frame. He arrives at this conclusion by interpreting the NEA provision that states:

> It is agreed that, in any event, the period of time during which the Employee competes with Company before litigation has reasonably begun, or during reasonably pursued litigation, will not be counted in calculating the time the Employee was restricted.

NEA ¶ 7.4(D).

Dr. Fame interprets the provision to say that the two year clock re-starts each time that he competes or litigation commences. A&I argues that a plain reading of the language yields a clear and different result. The Court agrees with A&I. In interpreting the language of a contract, the generally accepted rules of construction require a court to interpret words using their plain meaning. *Amos v. Coffey*, 228 Va. 88, 93, 320 S.E.2d 335, 337 (1984). The plain language of this provision tolls the two year period of restriction during any time that Dr. Fame is competing with A&I or during any reasonably pursued litigation. Upon the termination of Dr. Fame's competition, or at the conclusion of the litigation, the two year clock would re-start from the time at which it left off, giving Dr. Fame "credit" for the time that he did not compete before the competition which resulted in litigation. Read as such, there is no possible way that the period of actual restriction would last longer than two years total, although the two years might be broken up by competition and litigation.

D. *The NEA is Unduly Burdensome to Dr. Fame*

In addition to being unduly burdensome due to an ambiguous restrictive covenant and prohibiting the employee from working in any capacity for a competing employer, the NEA is also unreasonably oppressive because it severely hampers his ability to earn a livelihood. One of the factors in evaluating the enforceability of a non-competition covenant is whether is it unduly restrictive in preventing the employee from making a good faith effort to seek future employment. See, e.g., *Simmons*, 261 Va. at 580-81, 544 S.E.2d at 678; *Home Paramount*, 282 Va. at 418, 718 S.E.2d at 765; *Omniplex*, 270 Va. at 249, 618 S.E.2d at 342; *Modern Env'ts*, 263 Va. at 493, 561 S.E.2d at 695. Regardless of which interpretation of the ambiguous non-competition clause is upheld, the enforcement of this covenant would be unduly restrictive.

The Circuit Court of the City of Newport News, Virginia, dealt with a substantially similar issue in *Pais v. Automation Prods., Inc.,* 36 Va. Cir. 230 (1995), twenty years ago. In Pais, a restrictive covenant prevented a former corporate vice president from competing for two years within a 125 mile radius of each company office. See *id.* The employee conceded that he would be able to move away from the area and find a job, but explained that, due to family circumstances, such a move was not an option for him at the time. *Id.* at 237. In holding the covenant unenforceable, the Court found that "the enforcement of this covenant would force the [employee] to choose between a new career [and] a substantial relocation. Either option would severely curtail the [employee's] legitimate efforts to earn a living." *Id.* at 238-39.

Dr. Fame's situation is arguably similar to Mr. Pais's situation. Like Mr. Pais, Dr. Fame could relocate and establish a new practice in another area, Mem. of Def. Opp'n Pl.'s Mot. for Summ. J. 3, but it would involve certain difficulties. Like Mr. Pais, the enforcement of the covenant would force Dr. Fame to choose between finding a new career locally or moving away. For the same reasons that the Circuit Court of the City of Newport News found the covenant in Mr. Pais' case unenforceable, this Court finds the covenant in Dr. Fame's NEA unenforceable. This covenant unacceptably precludes the employee from pursuing his field in his chosen home. As such, it is unduly harsh and oppressive, and is, thus, unenforceable. *Simmons*, 261 Va. at 580-81, 544 S.E.2d at 678.

## Conclusion

For the reasons above, the Court grants Dr. Fame declaratory judgment that the NEA's restrictive covenant is unenforceable and further grants Dr. Fame permanent injunctive relief enjoining A&I from enforcing the non-competition covenant.