COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges O'Brien and AtLee
Argued at Fredericksburg, Virginia

GOLDEN KEY GROUP, LLC

                                                      MEMORANDUM OPINION[*] BY

v.      Record No. 1594-22-4                 JUDGE RICHARD Y. ATLEE, JR.
                                                   AUGUST 6, 2024

COMMUNICATION TECHNOLOGIES, INC.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David A. Oblon, Judge

David A. Temeles, Jr. (SouthBank Legal, on briefs), for appellant.

Edward J. Tolchin (Offit Kurman, P.A., on brief), for appellee.

This case concerns two government (sub)contractors, Golden Key Group, LLC ("GKG") and Communication Technologies, Inc. ("COMTek"), who agreed to work together in order to bid on and secure a government contract for providing Reserve Officers' Training Corps ("ROTC") instructors. They secured the bid and began work pursuant to their subcontract, but circumstances changed, the relationship between the parties deteriorated, and COMTek sued, ultimately prevailing in large part in the trial court. GKG breaks its arguments into numerous separate assignments of error,[1] but the outcome to each of them turns on two key questions:

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

[1] Specifically, GKG argues that the trial court erred in: (1) "finding that the parties extended the Subcontract past the base period . . . because the [c]ourt incorrectly placed the burden on GKG"; (2) "failing to require COMTek to prove a modification to extend the Subcontract by clear and convincing evidence"; (3) finding that the term of the subcontract had been extended "despite finding that the parties were still negotiating material terms"; (4) "finding that COMTek's qualification of its acceptance of GKG's December 2018 offer to exercise Option Year 1 was not a rejection"; (5) finding that GKG breached the terms of the subcontract; (6) finding that the subcontract's non-solicitation clause "was narrowly tailored to protect COMTek's legitimate business interest and did not violate public policy"; and (7) refusing to

(1) whether the parties' subcontract continued to be in effect past the base term ending in August 2018, and (2) whether the subcontract's non-solicitation clause was legally valid and enforceable. For the following reasons, we find no error in the trial court's ruling and affirm.

## I. BACKGROUND[2]

GKG and COMTek agreed to work together in order to bid on and secure a government contract for providing ROTC instructors. GKG had access to the necessary contracting vehicle, HR Solutions, but not enough experience with the ROTC program, while COMTek had substantial experience with the program, but no access to the HR Solutions contracting vehicle. They agreed to work together and ultimately won the bid, with GKG as the prime contractor and COMTek as subcontractor.

Their subcontract provided that GKG would perform 51% of the work and COMTek would handle the remaining 49%. The subcontract provided that if any change to the prime contract affected the rates or amount paid for work on the subcontract, GKG would adjust the rates or payments to COMTek accordingly. Their subcontract also included a non-solicitation clause, enforceable while the subcontract was in effect and for a year following its expiration or termination.[3] The subcontract had a base term through August 31, 2018, with provisions for how

---

grant GKG's motion to strike. Some repetition in GKG's ten assignments of error permits summarizing them down to seven.

[2] "On appeal, we review the facts in the light most favorable to the prevailing party at trial." *Manors LLC v. Bd. of Supervisors*, 76 Va. App. 737, 742 n.1 (2023) (quoting *Sugarland Run Homeowners Ass'n v. Halfmann*, 260 Va. 366, 371 (2000)).

[3] Specifically, GKG and COMTek agreed that "neither party will actively solicit, employ or otherwise engage any of the other party's employees (including former employees) who were involved in the Project." The subcontract further provided that, "[i]n the event either party breaches this provision, the breaching party agrees to pay to the aggrieved party within thirty (30) days after demand an amount equal to the greater of $50,000 or 100 percent (100%) of the annual base salary of any such employee as liquidated damages . . . ."

- 2 -

to exercise an annual option to renew the subcontract terms for the following two years ("Option Year 1" and "Option Year 2").

GKG and COMTek began work on the contract in March 2018. The Option Year 1 term arose on August 31, 2018. The Army dramatically increased the size of the prime contract after performance commenced. Around this time, the parties had a disagreement about splitting this extra staffing work, essentially, who would provide employees for additional ROTC instructor positions. The Army also increased the rates paid on the prime contract during Option Year 1, but GKG refused to pass along these increases despite the subcontract providing for it. GKG emailed COMTek, authorizing it to proceed working through September 2018 while they negotiated.

In December 2018, GKG sent COMTek a proposed modification of the subcontract, under which COMTek would have ten fewer positions than they had at the time, decreasing its portion of the work from 49% to 46%. COMTek signed the proposed modification of the subcontract, but with the caveat that this acceptance was "not an acceptance of the missing contract amount" because COMTek was entitled to 49% of the workshare under the subcontract.

On August 30, 2019, GKG issued COMTek a "cure notice," alleging multiple performance deficiencies under their agreement and giving COMTek seven days to cure them or face termination of the subcontract, effective September 30, 2019. The stated deficiencies were: "[l]ack of access to jointly owned data"; "[s]ubcontractor interference with access to personnel on the contract"; "[s]ubcontractor refusal to post vacancies"; "[f]ailure to perform timely"; "[s]ubcontractor provided software and website unable to meet program requirements"; "[w]ebsite links not functioning"; "[f]ailure to notify [GKG] of inability to perform"; and "[l]ack of financial stability."

The parties failed to resolve the dispute, and GKG terminated COMTek's subcontract, with COMTek stopping work in September 2019. On September 11, 2019, GKG emailed COMTek, including all of its employees working on the subcontract, informing it that COMTek was being removed as subcontractor, effective September 30th. It included information in the emails to the COMTek employees on how to apply for the ROTC positions through GKG. GKG ultimately hired 157 of COMTek's contract ROTC instructors, leaving COMTek without a workforce to compete for future bids, and essentially, as the trial court later held, left it "a now-destroyed company."

COMTek sued GKG for breach of contract. It alleged: (1) GKG failed to pay it for its work in September 2019; (2) GKG breached the non-solicitation clause in the subcontract; (3) GKG underpaid COMTek by reducing COMTek's workshare from 49% to 46%; and (4) GKG failed to pass the rate increase through to COMTek.[4]

Following a bench trial, the trial court issued a detailed letter opinion. It found overall in COMTek's favor, finding that the alleged deficiencies in GKG's "cure notice" were "pretextual" and "really [were about] trivial personality disputes," expressly stating it "did not believe GKG's complaints" in the cure notice were real problems or breaches. It found GKG had breached the subcontract by not paying COMTek for the work performed in September 2019, not maintaining COMTek's 49% of the work provided in the subcontract, and not passing rate increases through to COMTek. It also found the non-solicitation clause was valid and enforceable, with "minimal" burden on the employees and that it was "narrowly tailored to protect COMTek's legitimate business interest in its employees." Given that the non-solicitation clause was enforceable, the trial court held that GKG had violated it by contacting COMTek's employees, encouraging them

---

[4] The complaint alleged other matters that the parties settled or that are not at issue on appeal.

to apply for employment with GKG, and ultimately hiring them. The trial court awarded COMTek a total of $8,703,823.63, comprised of $696,418.56 for non-payment for COMTek's work in September 2019, $7,850,000 for the non-solicitation clause breach, $108,304.44 for the breach of the promised 49% workshare, and $49,100.63 for the breach of the agreement to pass along rate increases. GKG now appeals.

## II. ANALYSIS[5]

"When a trial court has heard the evidence *ore tenus*, its decree is entitled to the same weight as that which attaches to a jury verdict." *Quantum Dev. Co. v. Luckett*, 242 Va. 159, 161 (1991). "The trial court's finding[s] of facts are binding upon this Court unless they are plainly wrong or unsupported by the evidence." *Pyramid Dev., L.L.C. v. D&J Assocs.*, 262 Va. 750, 753 (2001). "For those issues that present mixed questions of law and fact, we give deference to the trial court's findings of fact and view the facts in the light most favorable to the prevailing party, but we review the trial court's application of the law to those facts *de novo*." *Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006). Finally, "[i]nterpretation of a contract is a question of law that is reviewed de novo." *Palmer & Palmer Co., LLC v. Waterfront Marine Constr.,*

---

[5] COMTek argues that GKG failed to preserve most of its assigned errors under Rule 5A:18, as it did not object to the trial court's rulings in the opinion letter. Code § 8.01-384(A), however, provides that "Formal exceptions to rulings or orders of the court shall be unnecessary; . . . and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection shall not thereafter prejudice him . . . on appeal." Here, the trial court's order and opinion letter were issued when the parties were not in the presence of the trial court, and the circuit court waived endorsement pursuant to Rule 1:13. Therefore, these circumstances satisfy the requirements of Code § 8.01-384(A).

Furthermore, while GKG could have filed a motion to reconsider, doing so is not required under these circumstances: "[E]ven though a party who was denied the opportunity to make a contemporaneous objection 'may be able to and may choose to file a motion to reconsider [and] may even be wise to do so,'" doing so "'is not required under Code § 8.01-384(A) in order to preserve an issue for appellate review.'" *Jacks v. Commonwealth*, 74 Va. App. 783, 793 (2022) (en banc) (second alteration in original) (quoting *Commonwealth v. Amos*, 287 Va. 301, 307 (2014)).

*Inc.*, 276 Va. 285, 289 (2008). "When a contract is clear and unambiguous, it is the court's duty to interpret the contract, as written." *Id.*

A. *Expiration or Extension of the Subcontract Term*

GKG argues that the subcontract terminated on August 31, 2018, and the Option Year 1 was never exercised, because the parties failed to reach an agreement on who would provide what portion of employees for additional ROTC instructor positions.

The trial court rejected GKG's argument, finding "the parties extended the Subcontract past the base period, and that both parties were operating under Option Year 1 after August 31, 2018. GKG authorized COMTek to continue working after August 31, 2018, and both parties continued to work and operate under the Subcontract." While it rejected COMTek's argument that "GKG was . . . obligated or required to extend the Subcontract beyond the base period into any of the Option Years," it found that "GKG did in fact extend it through Option Year 1" when "GKG authorized COMTek to continue performance on August 31, 2018, and COMTek performed." It concluded that, therefore, "GKG offered Option Year 1 to COMTek and COMTek accepted the extension offer." The trial court's conclusions are supported by the evidence and are not erroneous.

GKG's argument that the ongoing disagreement on the workshare allocation meant that the Option Year 1 term never began is unavailing. As the trial court noted: "[COMTek's] qualification and dispute in its acceptance was expressly permitted under the Subcontract. Part II, Section 4 of the Subcontract required COMTek to keep working through a dispute." It reads, in part, that "[f]ailure to agree to any adjustment shall be deemed a dispute under the Disputes clause of this Subcontract. However, Subcontractor shall proceed with the Work as changed without interruption and without awaiting settlement of any such claim." Therefore, the subcontract required COMTek, as the trial court described it, "to continue work during the

negotiations[,] and [it] was permitted to simultaneously seek an equitable adjustment." The trial court's reasoning is sound. The lack of agreement on the adjustment, which the subcontract allows for, did not constitute a rejection of the 12-month extension, and so, GKG was liable for breaches during that extended term of the contract.

B. *Breaches of Contract*

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (2004).

Here, GKG argues that the trial court erred in finding it breached the subcontract by "reducing COMTek's workshare to 46% and failing to pass through the rate increases because the Subcontract expired on August 31, 2018." It continues to argue that, even if the subcontract was in effect, the trial court "misinterpreted the terms as a matter of law in finding GKG in breach."

The first portion of this argument is already resolved—having found no error in the trial court's conclusion that the subcontract had not expired and was in effect after August 31, 2018, it clearly could not be error for the trial court to have found GKG in breach for that reason. As to the second argument, the record plainly supports the trial court's factual findings. When the Army increased the size and rate of the prime contract after performance commenced, GKG did not adequately adjust COMTek's share of the work, resulting in reducing COMTek's percentage share of the work below the 49% provided for in the subcontract. It is therefore indisputable that GKG reduced COMTek's workshare in violation of their agreed terms. Accordingly, since there is no dispute that GKG did not pay COMTek for its work past that point—the CEO of GKG even testified to that at trial—it was not error to order payment. It is similarly evident that GKG refused to pass through rate increases. There is even an email from the CEO and Managing Partner of GKG

questioning "Did we not share with [COMTek] the 3% escalation?" As such, the trial court did not err in finding GKG in breach, and accordingly ordering it to compensate COMTek according to the terms of their agreement in the subcontract.

C. *Non-solicitation Clause*

As described above, the subcontract contained a non-solicitation clause, prohibiting COMTek and GKG from soliciting or hiring employees of the other company who were working or had worked on the project. The clause was enforceable during the existence of the subcontract and for one year following the expiration or termination of the subcontract.

There are policy concerns that a court must consider when reviewing a non-solicitation clause, namely in circumstances where as "part of the agreement, one party agrees to forego the ability to hire certain people who are not parties to the contract." *Therapy Servs. v. Crystal City Nursing Ctr.*, 239 Va. 385, 388 (1990). Because "it is a contract in restraint of trade[, it] will be held void as against public policy if it is unreasonable as between the parties or is injurious to the public." *Id.* Deciding whether "the restraint is reasonable is to be determined by considering whether it is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interest of the public." *Id.* (quoting *Merriman v. Cover*, 104 Va. 428, 436 (1905)).

Here, the trial court found that "[t]he non-solicitation agreement was narrowly tailored to protect COMTek's legitimate business interest in its employees [and] did not violate public policy." The trial court carefully considered the interests of COMTek, COMTek's employees, and GKG. It found that "COMTek had a legitimate interest in its employees." It noted that "[t]he employees, its website and database, and its' leaders experience were really COMTek's only valuable assets," and that when COMTek "joined with GKG to compete for and service the Army ROTC contract, it relied on the non-solicitation agreement to protect the company from

GKG simply adopting COMTek's workforce as its own." The trial court concluded "the burden . . . on the employees themselves" was "minimal" because "from [the employees'] perspective, different companies swapped in and out of the Army ROTC contract with a core employee group doing the same work [who] simply [saw] different signatures on their paychecks."

The trial court's factual findings, and the reasoning and conclusions that flow from those findings, are sound. The non-solicitation clause places no direct restrictions on the employees; the restrictions, and burdens that flow from them, fell on GKG. Accordingly, the trial court did not err in concluding that the non-solicitation clause was reasonable and did not violate public policy.

The trial court then turned to whether GKG breached that clause when it contacted COMTek's workforce and encouraged them to apply for positions with GKG. It held:

> GKG sent this email directly to all COMTek employees working on the contract. In the email[,] GKG included a link to a new website GKG used for recruiting personnel for the Army ROTC program. *The Court finds as fact that this email was a direct attempt by GKG to get COMTek employees to visit the website and therein re-apply for their jobs with GKG.*

(Emphasis added.) This finding is not plainly wrong, and, as such, the trial court did not err in finding the non-solicitation clause was enforceable, and GKG breached it.

D. *Remaining Arguments*

GKG presents a handful of other arguments, specifically regarding the trial court allegedly applying the wrong burden of proof and improperly placing certain burdens of proof upon GKG instead of COMTek. It is difficult to even analyze these arguments because there is, quite simply, nothing in the record that supports these claims. Accordingly, these arguments are without merit.

Further, GKG argues that it was error to deny its motion to strike. When reviewing a trial court's denial of a motion to strike, "the trial court's judgment will not be disturbed unless it is plainly wrong or without evidence to support it." *Sidya v. World Telecom Exch. Commc'ns, LLC*, 301 Va. 31, 37 (2022) (quoting *Nolte v. MT Tech. Enters., LLC*, 284 Va. 80, 90 (2012)). "A denial of a motion to strike is error only if it 'is conclusively apparent that [the non-moving party] has proven no cause of action' or the non-moving party's position is plainly without evidence to support it." *Dixon v. Dixon*, 71 Va. App. 709, 714 (2020) (alteration in original) (quoting *Parson v. Miller*, 296 Va. 509, 524 (2018)).

As should be evident, given that we have found no error in the trial court's rulings in favor of COMTek, inherently those claims amounted to proper causes of action and were supported by the evidence. Therefore, the trial court could not have erred by denying GKG's motion to strike.

## III. CONCLUSION

For the foregoing reasons, the trial court did not err in its factual or legal conclusions, and we affirm its rulings.

*Affirmed*.